**Lawrence MADEKSHO, Roy and Mary Malone, Thomas Gillespie, and Patricia Garefalos, Appellants,**

v.

**ABRAHAM, WATKINS, NICHOLS & FRIEND, Robert Ballard and the Law Office of Robert E. Ballard, P.C., Appellees.**

No. 14–01–00453–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 10, 2003.

---

Lawrence Madeksho, Houston, pro se.

Charles B. Frye, Houston, for appellants.

Don Weitinger, Houston, for appellees.

**1.** *See Owens–Corning Fiberglas Corp. v. Malone,* 916 S.W.2d 551 (Tex.App.-Houston [1st Dist.] 1996), *aff'd,* 972 S.W.2d 35 (Tex.1998).

**681**

### EN BANC PLURALITY OPINION ON REHEARING

SCOTT BRISTER, Chief Justice.

This case is part of the debris from a falling-out between attorneys who worked together on asbestos cases for almost twenty years. Generally, attorney Lawrence Madeksho signed up the clients and did the pretrial work, while Robert Ballard and the law firm of Abraham, Watkins, Nichols & Friend ("the law firm") did most of the trial work. They orally agreed to split any contingency fees earned.

Four of their clients (Roy Malone, Mary Malone, Thomas Gillespie, and Patricia Garefalos) sued Owens–Corning Fiberglas Corporation in 1988. The clients signed a contract with Madeksho providing for a 40% contingency fee, increasing to 45% if an appeal was filed. The clients won a $4.5 million verdict at trial, which grew to more than $10 million by the time the judgment became final. The First Court of Appeals affirmed.[1]

While the case was pending in the Texas Supreme Court, a separate dispute arose between Madeksho and the law firm. When the law firm decided to withdraw from future asbestos litigation, Madeksho stopped payment on the firm's share of fees from past litigation, including a $1 million fee from a settlement with Fibreboard Corporation. At the end of that dispute, we affirmed summary judgment against Madeksho enforcing the law firm's oral fee-splitting agreement.[2]

After these developments, the clients wrote a letter with Madeksho's assistance (the law firm claims it was at his insti-

**2.** *See Madeksho v. Abraham, Watkins, Nichols & Friend,* 57 S.W.3d 448, 449 (Tex.App.-Houston [14th Dist.] 2001, pet. denied).

gation) asserting a conflict of interest, firing the law firm in the Owens–Corning appeal, and instructing the firm not to contact them.

The Supreme Court affirmed the clients' judgment against Owens–Corning on June 5, 1998.[3] Within a week, counsel for the law firm wrote Owens–Corning claiming a portion of the judgment, and requesting that any payment include the firm's name, or be made by interpleader in the trial court. Soon thereafter, Madeksho notified Owens–Corning the entire judgment should be paid to the clients, and nothing should be paid to the law firm.

Having received these conflicting claims, Owens–Corning filed an interpleader in the underlying case in the trial court three days after the Supreme Court's mandate issued. At a hearing seventeen days after the mandate issued, all parties agreed the clients were entitled to 55% of the final judgment, which was paid directly to them. The trial court ordered the remainder paid into the court's registry pending resolution of the fee dispute. Everyone signed releases in favor of Owens–Corning, which was dismissed with prejudice. A month later, an agreed order authorized payment from the registry of about $1 million to the appellate attorneys who handled the successful appeals.

The law firm filed a cross-claim against Madeksho for breach of contract and quantum meruit, seeking 50% of the amount remaining in the registry plus consequent attorney's fees and costs. Madeksho filed a plea to the jurisdiction challenging the trial court's power to decide the matter, and cross-claimed against the law firm asserting breach of contract, breach of fiduciary duty, and fee forfeiture. The clients filed a response to the interpleader, a motion to dismiss, and a motion to enforce the mandate requesting that all funds be paid to them.

On its own motion, the trial court severed all claims filed after the original interpleader, and set a trial for January 30, 2001, on the sole issue of allocating the funds in the registry between the attorneys. The day before trial, Madeksho sought a writ of prohibition and an emergency stay from the Texas Supreme Court, both of which were denied the day they were filed. When called to trial, both parties waived a jury, and the trial court awarded each party half the funds remaining in the registry (by now almost $4 million).

Madeksho and the clients appealed, but did not supersede the judgment; on May 24, 2001, the funds were disbursed. A panel of this Court held the trial court had no subject-matter jurisdiction to conduct the post-judgment proceedings. The panel pointed to *Harris County Children's Protective Services v. Olvera*,[4] in which this Court said trial courts have no jurisdiction to do anything except what is stated in an appellate mandate. Here, the Supreme Court mandate stated:

> Roy Malone, et al. shall recover from Owens–Corning Fiberglas Corporation and surety Aetna Casualty & Surety Company, who shall pay the costs in this Court and in the court of appeals.

The panel held this mandate meant the trial court could do nothing but order Owens–Corning to pay the clients.[5] The pan-

---

**3.** See *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35 (Tex.1998).

**4.** 971 S.W.2d 172, 175–76 (Tex.App.-Houston [14th Dist.] 1998, pet. denied).

**5.** *Madeksho v. Abraham, Watkins, Nichols & Friend*, No. 14–01–00453–CV, 2002 WL 31554533 (Tex.App.-Houston [14th Dist.] Sept. 19, 2002). (Opinion withdrawn, see now this opinion).

el also relied on *Wong v. Smith,*[6] in which we prohibited post-judgment interpleaders of any kind as untimely.

No one was happy with the panel opinion—all parties filed motions for rehearing en banc. The law firm argued the panel had gone too far, interpreting the Supreme Court mandate too strictly. The clients and Madeksho argued the panel had not gone far enough, refusing to order the law firm to return any money to them (a result of their "no jurisdiction" argument they perhaps had not anticipated).

This is not the first time we have been asked to review post-mandate claims to a judgment. On at least four occasions, we have reviewed post-judgment claims to all or part of a judgment by attorneys or other creditors, without once indicating any jurisdictional concerns.[7] Numerous other courts have as well.[8]

Our dissenting colleagues find the conflict between these cases and the panel opinion "illusory" because (1) the conflict is not explicit and (2) our earlier cases merely concerned creditors' post-judgment attempts to attach property. But jurisdiction is an issue in all cases whether explicitly mentioned or not; we cannot distinguish our other cases on the presumption that jurisdiction was waived or that we failed to think about it.[9] And if the law firm's claim here is a collateral attack on a judgment, so were all our earlier post-judgment cases; in each case, creditors were asking that a judgment mandating payment to one party should instead be paid to them. All of us agree a trial court judgment is property that creditors may seize; our dissenting colleagues would hold an appellate judgment is something more.

Because we have sometimes allowed trial courts to adjudicate post-mandate claims to a judgment, but the panel opinion did not, we granted rehearing en banc to settle the conflict.[10]

### Jurisdiction and *Olvera*

In *Olvera,* we reached the unimpeachable conclusion that a final mandate assessing appellate costs does not authorize the trial court to enter a new judgment

---

**6.** 537 S.W.2d 468 (Tex.Civ.App.-Houston [14th Dist.] 1976, orig. proceeding).

**7.** *See Burns v. Bishop,* 48 S.W.3d 459, 467 (Tex.App.-Houston [14th Dist.] 2001, no pet.) (adjudicating post-mandate intervention, garnishment, and turnover claims to funds placed in court's registry); *Northshore Bank v. Commercial Credit Corp.,* 668 S.W.2d 787, 789 (Tex.App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.) (adjudicating post-mandate interpleader); *Velasquez v. Lunsford,* No. 14–95–00172–CV, 1996 WL 544429, *2 (Tex.App.-Houston [14th Dist.] Sept. 26, 1996, no writ) (not designated for publication) (adjudicating post-judgment claims to fee portion of settlement deposited in court's registry); *First Bank of Lamarque v. Alexander,* No. 14–89–00837–CV, 1990 WL 68486 (Tex. App.-Houston [14th Dist.] May 24, 1990, no writ) (not designated for publication) (adjudicating post-judgment intervention by attorney claiming assignment of fee portion of judgment).

**8.** *See, e.g., Palandjoglou v. United Nat'l Ins. Co.,* 821 F.Supp. 1179, 1181 (S.D.Tex.1993); *Stuart v. Bayless,* 945 S.W.2d 131, 135 (Tex. App.-Houston [1st Dist.] 1996), *aff'd in part, rev'd in part,* 964 S.W.2d 920 (Tex.1998); *Onwuteaka v. Gill,* 908 S.W.2d 276, 279 (Tex. App.-Houston [1st Dist.] 1995, no writ); *Coit v. Dallas County Flood Control Dist. No. 1,* 900 S.W.2d 907, 908 (Tex.App.-Eastland 1995, no writ); *Enochs v. Brown,* 872 S.W.2d 312, 316 (Tex.App.-Austin 1994, no writ); *Commercial Credit Corp. v. U.S. Fire Ins. Co.,* 630 S.W.2d 651, 652 (Tex.Civ.App.-Houston [1st Dist.] 1981, writ ref'd n.r.e.).

**9.** *See Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 443–44 (Tex.1993) (stating subject-matter jurisdiction is never presumed and cannot be waived).

**10.** *See* Tex.R.App. P. 41.2(c).

adding attorney's fees to the old one.[11] The opinion is somewhat ambiguous on whether this was a question of jurisdiction or a question of simple error. Although we stated the trial court had "no jurisdiction" to do anything beyond the appellate mandate, we also found the trial court "abused its discretion" in entering the new awards.[12] Jurisdictional matters are reviewed de novo, not for abuse of discretion;[13] if the trial court had no jurisdiction, it had no discretion in the case to abuse. Further, the proper disposition in jurisdictional cases is to set aside the trial court's judgment and dismiss the appeal;[14] in *Olvera*, we reversed and rendered judgment.[15]

The *Olvera* court quoted our older sister's opinion in *Myers v. Myers*[16] for the proposition that trial courts on remand have "no jurisdiction to review, interpret or enforce" an appellate mandate.[17] This language—often quoted by intermediate appellate courts[18]—comes from *Conley v.*

*Anderson*,[19] a 1913 opinion in which the Supreme Court stated "no district court ha[s] jurisdiction to review [our] judgment, nor to interpret and enforce it, but must observe it as it was framed by this court."

Perhaps that statement was true in 1913, but it cannot possibly be true today. If trial courts cannot "enforce" appellate judgments, why has the Supreme Court said they must?[20] If lower courts cannot "interpret" appellate mandates, why has the Court authorized us to use its related opinion to do just that?[21]

*Myers* itself shows this language has never been applied literally. There, the First Court of Appeals affirmed a judgment awarding Mrs. Myers $20,000 in attorneys' fees.[22] The trial court ordered this sum (held in the registry of the court) to be paid to her attorneys, *not* Mrs. Myers. The First Court refused to exercise jurisdiction in the matter, finding this order ancillary to the merits, and not an

**11.** 971 S.W.2d at 175–76.

**12.** *See id.* at 175–78.

**13.** *See Texas Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

**14.** *See Estate of C.M. v. S.G.*, 937 S.W.2d 8, 11 (Tex.App.-Houston [14th Dist.] 1996, no writ).

**15.** 971 S.W.2d at 178. Our dissenting colleagues incorrectly say we rely on *Olvera's* reversal and remand of one issue (appellate fees for the second appeal); in fact, we rely on the reversal and rendition (not dismissal) of a separate issue that went beyond the first mandate (appellate fees for the first appeal).

**16.** 515 S.W.2d 334, 335 (Tex.App.-Houston [1st Dist.] 1974, writ dism'd).

**17.** *Olvera*, 971 S.W.2d at 176; *Myers*, 515 S.W.2d at 335.

**18.** *See, e.g., Dallas County v. Sweitzer*, 971 S.W.2d 629, 631 (Tex.App.-Dallas 1998, no

pet.); *Contemporary Health Mgmt., Inc. v. Palacios*, 832 S.W.2d 743, 747 (Tex.App.-Houston [14th Dist.] 1992, no writ); *Martin v. Credit Prot. Ass'n*, 824 S.W.2d 254, 255 (Tex. App.-Dallas 1992, writ dism'd w.o.j.); *Schliemann v. Garcia*, 685 S.W.2d 690, 692 (Tex.App.-San Antonio 1984, no writ); *Bilbo Freight Lines, Inc. v. State*, 645 S.W.2d 925, 927 (Tex.App.-Austin 1983, writ ref'd n.r.e.); *Los Campeones, Inc. v. Valley Int'l Prop., Inc.*, 591 S.W.2d 312, 315 (Tex.Civ.App.-Corpus Christi 1979, no writ).

**19.** 164 S.W. 985, 986 (Tex.1913).

**20.** *See* Tex.R.App. P. 51.1(b); *Edgewood Indep. Sch. Dist. v. Kirby*, 804 S.W.2d 491, 494 (Tex. 1991) (requiring trial court to "observe and enforce" Supreme Court's judgment).

**21.** *See Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex.1986) (holding lower courts should look to both mandate and appellate opinion to interpret mandate).

**22.** *Myers*, 515 S.W.2d at 335.

interference with its jurisdiction.[23] If anything, the case stands for the proposition that a judgment ordering "payment to Mrs. Myers" can be satisfied by paying her attorneys.

In this case, the Supreme Court's mandate required Owens–Corning to pay "Roy Malone, *et al.*" (emphasis added). Interpreting "et al." to mean his three co-plaintiffs may be easy, but it is an interpretation nonetheless. If no one can interpret Supreme Court mandates, then the panel opinion violated its own rule.

Moreover, if defendants must pay the person named in the mandate—and no one else—they will sometimes have to pay the dead.[24] If the judgment has been assigned to someone else, they will have to pay twice.[25] In the past, we have not construed mandates so strictly.[26]

■ Clearly, trial courts must obey appellate mandates, and they abuse their discretion if they do not. But it is not a

matter of jurisdiction—they do not suddenly step out into thin air. Trial courts retain their constitutional jurisdiction to perform duties collateral to and consistent with those mandates.[27] For example, they may

- Adjudicate turnover disputes; [28]
- Issue writs of execution, and adjudicate disputes related thereto; [29]
- Create, modify, or terminate trusts set up for minors or the incapacitated; [30]
- Consider motions for contempt and to enforce; [31]
- Recalculate prejudgment interest; [32] and
- Discharge a judgment lien after bankruptcy.[33]

None of these duties are mentioned in most appellate mandates, yet trial courts undoubtedly have jurisdiction to perform them long after a mandate has issued. And it is hard to see why these activities constitute "enforcing" the judgment (as

23. *Id.* at 335–36.

24. *See* Tex.R.App. P. 7.1 (providing appeal may be adjudicated as if party who dies after judgment is still alive).

25. *See* Tex. Prop.Code § 12.014; *Honeycutt v. Billingsley*, 992 S.W.2d 570, 584 (Tex.App.-Houston [1st Dist.] 1999, pet. denied) (affirming attorney's right to bring action against defendant who, with notice of his fee claim, paid full judgment to plaintiff).

26. *See, e.g., Ohio Med. Prods., Inc. v. Suber*, 758 S.W.2d 870, 873 (Tex.App.-Houston [14th Dist.] 1988, writ denied) (suggesting judgment "for plaintiff" may provide for hospital as well).

27. *See In re Bennett*, 960 S.W.2d 35, 39–40 (Tex.1997) (holding trial court had ministerial duty to dismiss after non-suit and take no action after removal to federal court, but still had jurisdiction to sanction counsel, as collateral matter not inconsistent with merits or either ministerial duty); *see also Bayoud v. Bayoud*, 797 S.W.2d 304, 310 (Tex.App.-Dallas 1990, writ denied) (holding mandate or-

dering trial court to take no further action regarding receivership did not bar it from issuing orders to dispose of receivership property in registry).

28. *See* Tex. Civ. Prac. & Rem.Code § 31.002; *Lozano v. Lozano*, 975 S.W.2d 63, 68 (Tex. App.-Houston [14th Dist.] 1998, pet. denied).

29. *See* Tex. Civ. Prac. & Rem.Code §§ 34.001–.067.

30. *See* Tex. Prop.Code §§ 142.001–.007; *see, e.g., Texas State Bank v. Amaro*, 87 S.W.3d 538, 542 (Tex.2002).

31. *See, e.g., Cook v. Cameron*, 733 S.W.2d 137, 139 (Tex.1987).

32. *See D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 999 S.W.2d 887, 894 (Tex.App.-Waco 1999, pet. denied).

33. *See* Tex. Prop.Code § 52.022(a); *Laswell v. Houston Citizens Bank & Trust Co.*, 640 S.W.2d 701, 702 (Tex.App.-Houston [14th Dist.] 1982, no writ).

our dissenting colleagues argue), but deciding who should get the proceeds (as in this case) does not.

There is a great difference between a court's *power* to act and whether its act was *proper*.[34] In *Dubai Petroleum Co. v. Kazi*,[35] the Supreme Court reversed a long line of cases holding statutory prerequisites "jurisdictional," noting the serious and long-lasting consequences of such a categorization:

> [A] judgment will never be considered final if the court lacked subject-matter jurisdiction. 'The classification of a matter as one of [subject-matter] jurisdiction ... opens the way to making judgments vulnerable to delayed attack for a variety of irregularities that perhaps better ought to be sealed in a judgment.' (citation omitted) ... [I]t seems perverse to treat a judgment as perpetually void merely because the court or the parties made a good-faith mistake in interpreting the law.[36]

Because a void order is a nullity,[37] it may be collaterally attacked years later. Or it may be simply ignored. This is a recipe for disorder.

■ Of course, *Kazi* was not a mandate-compliance case, and no court appears to have considered it in that context in the three years since. But several recent Supreme Court cases hold a trial court "errs" if it strays from a mandate, not that it has "no jurisdiction."[38] And the principles stated in *Kazi* support this approach. "[T]he modern direction of policy is to reduce the vulnerability of final judgments to attack on the ground that the tribunal lacked subject-matter jurisdiction."[39] Thus, as in *Kazi*, we believe the trial court's jurisdiction depends on the nature of the underlying claim, not whether it properly follows the appellate mandate.[40]

■ Here, the trial court clearly had jurisdiction of the underlying claim. We need not address cases in which plenary jurisdiction expired or specific issues were remanded (relied on by our dissenting colleagues) because in this case there was a new filing—a post-judgment interpleader. Trial courts unquestionably have *quasi in rem* jurisdiction to determine who owns funds tendered into the registry.[41] Indeed, they must have such jurisdiction; they cannot simply toss the money back out the clerk's window. As this Court has stated, "[f]unds on deposit in the registry of a trial court are *always* subject to the control and order of the trial court, and the court enjoys great latitude in dealing with them."[42] Here, Owens–Corning in-

---

34. *Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 207 (Tex.2001).

35. 12 S.W.3d 71 (Tex.2000).

36. *Id.* at 76 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 12 cmt. b, at 118 (1982)).

37. *See State ex rel. Latty v. Owens*, 907 S.W.2d 484, 486 (Tex.1995).

38. *See, e.g., Texas Workers' Comp. Ins. Fund v. Mandlbauer*, 34 S.W.3d 909, 912 (Tex.2000) (holding court of appeals did not have discretion to assess costs contrary to Supreme Court's earlier mandate); *Cook*, 733 S.W.2d at 139 (holding "trial court erred in not enforcing [our] judgment as rendered").

39. *Kazi*, 12 S.W.3d at 76 (citations omitted).

40. *Id.* (holding trial court's jurisdiction grew out of wrongful death claim, not whether claimants had complied with statutory prerequisites applicable to foreign plaintiffs).

41. *See Bryant v. United Shortline Inc. Assur. Servs.*, 972 S.W.2d 26, 29 (Tex.1998) (stating interpleaded funds "gave the trial court jurisdiction over the funds to disburse them upon determining ownership").

42. *Burns v. Bishop*, 48 S.W.3d 459, 467 (Tex. App.-Houston [14th Dist.] 2001, no pet.) (emphasis added).

terpleaded the judgment amount into the court registry; that was jurisdiction enough.

The *Kazi* Court branded as "perverse" the consequences of treating judicial errors as jurisdictional, and thus perpetually void.[43] As noted at the outset, this Court and others have decided many post-judgment interpleaders over the years; if we had no jurisdiction, they are all subject to collateral attack. The trial court's order in this case included not only whom Owens–Corning should pay, but the releases it should receive in return; if the order is void, are the releases as well? And the successful appellate lawyers would no doubt be surprised to learn the $1 million fee they received is void—even though everyone agreed to it—as parties cannot bestow subject-matter jurisdiction by consent.[44]

This fee dispute arose after and was collateral to the underlying asbestos case, and could in no way affect that judgment. Our dissenting colleagues concede that a trial court may adjudicate post-judgment claims that do not conflict with the judgment. Here, nothing the trial court did was inconsistent with the Supreme Court's mandate: Owens–Corning paid $10 million, and the clients or their assignees (the trial attorneys) got it all. So when a dispute arose post-judgment about who the proper trial attorney was, the trial court had jurisdiction to decide.

## Timely Interpleader and *Wong*

The panel also held that Owens–Corning's interpleader was improper because it was filed after the Texas Supreme Court issued its opinion. In *Wong v. Smith,* we held that no interpleader could be filed post-judgment.[45] But a closer look at the cases we relied on in *Wong* indicates our absolute prohibition went too far.

In *Wong,* the successful plaintiffs had gone through four attorneys (two were fired, one died). The fired attorneys intervened before judgment and agreed to severance of their fee claim pending resolution of the underlying suit. When a final mandate issued affirming the plaintiffs' award, the defendant interpleaded the full judgment, and the fee dispute began. But *nothing* was distributed to the plaintiffs in the interim. This Court correctly held that equity could not be used to delay their recovery any longer.[46]

■ Nevertheless, we erred in quoting cases from the early 1900s for the proposition that post-judgment interpleader is *never* proper. Certainly, if a party holding property knows of three claimants, it cannot file suit against one, then lose, and then delay payment by interpleading the other two. That is what happened in each of the early cases cited by *Wong,*[47] and in each of the out-of-state cases catalogued by our dissenting colleagues. But that is not what happened here—neither Owens–Corning nor the law firm could have known about the fee dispute pre-judgment, as it arose four years later. In this situa-

**43.** *Kazi,* 12 S.W.3d at 76.

**44.** *Id.*

**45.** 537 S.W.2d 468 (Tex.Civ.App.-Houston [14th Dist.] 1976, orig. proceeding).

**46.** *Id.* at 470; *see also Olmos v. Pecan Grove Mun. Util. Dist.,* 857 S.W.2d 734, 741 (Tex. App.-Houston [14th Dist.] 1993, no writ) (stat-

ing interpleader unavailable in cases of unreasonable delay).

**47.** *See Farmers State Bank of Meridian v. Nat'l Fire Ins. Co.,* 169 S.W.2d 545, 549 (Tex.Civ. App.-Waco 1943, no writ); *Nash v. McCallum,* 74 S.W.2d 1046, 1047 (Tex.Civ.App.-El Paso 1934, no writ); *United Producers' Pipe Line Co. v. Britton,* 264 S.W. 576, 578 (Tex. Civ.App.-El Paso 1924, writ ref'd).

tion, we believe the equitable remedy of interpleader should be available, for several reasons.[48]

First, interpleader is an equitable remedy intended to fill the gaps when legal remedies are inadequate. Judgment debtors may receive just as many claims after a mandate as they receive before it. As the split opinions in this appeal show, reasonable minds can disagree about the jurisdiction and interpretation of an appellate mandate. When judgment debtors must decide among conflicting claims at their peril, that peril is no less simply because it arises after judgment.

■ Second, in this case, Owens–Corning could not have filed earlier. Interpleader requires an unconditional tender,[49] a condition entirely inconsistent with prosecuting a $10 million appeal. Owens–Corning filed a supersedeas bond; requiring an unconditional tender of the entire judgment would have required it to supersede twice.

■ Third, funds in the registry of the court are held *in custodia legis,* and thus exempt from claims by third parties.[50]

There is no point in requiring an earlier interpleader if no one can file claims to the funds until after the mandate issues and the funds are released.[51]

Fourth, if Owens–Corning had not interpleaded the funds, the law firm might have protected itself by filing a garnishment against Owens–Corning,[52] or perhaps intervening in the post-judgment proceedings below.[53] If those proceedings would have been timely, it is hard to see why interpleader was not. The result should not be different because of the form of action employed.

The clients and Madeksho argue the law firm could have pursued its claims by filing a separate case. But *Wong* forecloses that option. There, the defendant filed its interpleader as a separate action and paid every dime of the judgment into the registry.[54] Nonetheless, we ordered the trial court to allow the plaintiff to extract the judgment a second time by issuing execution in the first suit on the defendant's real property.[55] Appellate judgments should certainly be enforced, but not twice.

It is also unclear that a separate case— perhaps in a separate court—is an ade-

---

**48.** *See Van Slyck v. Dallas Bank & Trust Co.,* 45 S.W.2d 641, 643 (Tex.Civ.App.-Dallas 1931, no writ) (holding post-judgment interpleader in separate action was proper to protect judgment debtor from having to pay twice).

**49.** *See Tri–State Pipe & Equip., Inc. v. S. County Mut. Ins. Co.,* 8 S.W.3d 394, 403 (Tex. App.-Texarkana 1999, no pet.).

**50.** *See First S. Props., Inc. v. Vallone,* 533 S.W.2d 339, 343 (Tex.1976) (exempt from execution); *Daniels v. Pecan Valley Ranch,* 831 S.W.2d 372, 382 (Tex.App.-San Antonio 1992, writ denied) (exempt from garnishment); *Crouch v. Shields,* 385 S.W.2d 580, 584 (Tex. Civ.App.-Dallas 1964, writ ref'd n.r.e.) (exempt from sequestration).

**51.** *See Burns v. Bishop,* 48 S.W.3d 459, 466–67 (Tex.App.-Houston [14th Dist.] 2001, no pet.); *Hardy v. Constr. Sys., Inc.,* 556 S.W.2d

843, 844 (Tex.Civ.App.-Houston [14th Dist.] 1977, writ ref'd n.r.e.); *Houston Drywall, Inc. v. Constr. Sys., Inc.,* 541 S.W.2d 220, 221 (Tex.Civ.App.-Houston [1st Dist.] 1976, no writ).

**52.** *See Northshore Bank v. Commercial Credit Corp.,* 668 S.W.2d 787, 789 (Tex.App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.).

**53.** *See Breazeale v. Casteel,* 4 S.W.3d 434, 436 (Tex.App.Austin 1999, pet denied) (allowing post-judgment intervention by party claiming interest in property that became subject of turnover proceeding).

**54.** *Wong,* 537 S.W.2d at 469.

**55.** *Id.* at 470.

quate legal remedy. Most post-judgment disputes must be raised in the trial court that rendered the judgment, as it is usually familiar with the case and can settle disputes more quickly.[56] Moreover, a judgment in a separate suit for fees will come too late if the clients have already taken the funds and invested them in exempt assets, or spent them on unrestrained living. The clients in this case offer us no guarantee that if they receive the interpleaded funds, they will ever be seen again.

■ But a separate action is not an adequate remedy for an even more basic reason: it would deprive the law firm of a property right. After judgment, attorneys who earn a contingency fee are equitable owners (not mere claimants) of their portion of the judgment.[57] Due to this property interest, a defendant who pays a judgment in full to the opposing party without accounting for the contingency-fee claim will have to pay the fee portion twice.[58] If we ignore the law firm's equitable interest and order the entire judgment paid to the clients, the law firm will be deprived of property with no assurance it will be returned. Property rights cannot be treated so indifferently.

■ We disagree with our dissenting colleagues that Owens–Corning had no exposure to multiple liability because it was paying a judgment rather than a settlement; it is hard to see why paying a settlement twice is a peril but paying a judgment twice is not. And while the judgment Owens–Corning had to pay did not mention attorneys' fees, the law firm claimed a substantial portion of that judgment had been assigned as fees to Madeksho, and by him to the law firm. This was not a facially invalid claim, as our enforcement of the Fibreboard fee shows.[59]

But more important, such distinctions miss the point of interpleader. The question is not whether the conflicting claims are easy for us, but for the party facing conflicting claims. Appellate judges make decisions after discovery has been completed, the case has been tried, and all the appellate briefs are in. We see the world through the glasses of hindsight, and risk nothing if we are wrong. But debtors rarely have these advantages. Who could fail to see the peril in a demand letter asserting an interest in several million dollars about to be paid to someone else?

Our dissenting colleagues would have us stick to *Wong* on the principle of certainty in the law. We agree this is an important principle, but we disagree that we violate it, as (1) no court has *ever* cited *Wong* until the panel here did 26 years later, (2) no other case in 60 years has held post-judgment interpleaders untimely, and (3) this

---

56. *See, e.g.,* Tex. Civ. Prac. & Rem.Code 15.012.–013, 65.023(b) (requiring actions to stay court proceedings or halt execution to be brought in court that rendered judgment); *In re Natl. Unity Ins. Co.,* 963 S.W.2d 876, 878 (Tex.App. San Antonio 1998, no pet.) (requiring bill of review to be brought in court that rendered judgment). We have suggested that the post-judgment dispute should receive a new cause number, though failure to do so is an administrative error that does not affect the merits. *See Burns,* 48 S.W.3d at 461 n. 1.

57. *See Mo. Pac. R.R. v. Austin,* 292 F.2d 415, 419 (5th Cir.1961); *Velasquez v. Lunsford,* No.

14–95–00172–CV, 1996 WL 544429, at *6 (Tex.App.-Houston [14th Dist.] Sept. 26, 1996, no writ) (not designated for publication).

58. *Honeycutt v. Billingsley,* 992 S.W.2d 570, 584 (Tex.App.-Houston [1st Dist.] 1999, pet. denied).

59. *See Madeksho v. Abraham, Watkins, Nichols & Friend,* 57 S.W.3d 448 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (affirming judgment for law firm against Madeksho for one-half of contingency fees received).

Court and many others have routinely entertained them. *Wong* stands alone as an exception, not the rule; accordingly, we disapprove of its holding that post-judgment interpleaders are never proper.

■ Because of the uncertainties and liabilities facing judgment debtors who receive conflicting claims—claims often based on disputes in which they had no part—the law requires us to resolve every reasonable doubt in favor of a stakeholder's right to interplead, and affirm a trial court's interpleader order absent an abuse of discretion.[60] Applying that standard, we find the trial court did not err in exercising jurisdiction of this post-mandate dispute.

### Severance

■ In a second point, Madeksho and the clients argue the trial court erred by severing all their defensive issues to the law firm's fee claim. On this point, we agree.

Texas law discourages multiplicity of suits, preferring that all disputes between the parties over the same subject matter be settled in one suit.[61] A trial court has discretion to sever claims when: (1) the controversy involves more than one cause of action; (2) the severed claim could be asserted independently in a separate lawsuit; and (3) the severed actions are not so interwoven with the other claims that they involve the same facts and issues.[62]

Here, the fee forfeiture and breach claims could have been brought in separate suits.[63] And a claim for attorney's fees may be severed from the underlying claims.[64] But once the law firm and Madeksho filed cross-claims against each other in the interpleader, any claims arising from the same transaction or occurrence had to be filed in the same suit.[65]

■ In this case, the law firm's claim was based on an oral understanding with Madeksho. Madeksho and the clients alleged the agreement was unenforceable, and had been forfeited by the law firm's post-trial actions. On appeal, the law firm argues these defenses have been rejected by the First Court of Appeals,[66] but that was not the basis for the trial court's severance, and there is no summary judgment motion asserting this ground. We cannot take judicial notice that claims are collaterally estopped.[67]

Whether the law firm was entitled to a fee, and if so how much, is a single dispute that could not be severed into separate parts. We sustain the second point.

### Conclusion

In a perfect world, appellate mandates would settle all questions and end all dis-

60. *See Bryant v. United Shortline Inc. Assur. Servs.,* 972 S.W.2d 26, 31 (Tex.1998).

61. *See Barrientos v. Nava,* 94 S.W.3d 270, 277 (Tex.App.-Houston [14th Dist.] 2002, no pet.).

62. *See Liberty Nat'l Fire Ins. Co. v. Akin,* 927 S.W.2d 627, 629 (Tex.1996).

63. *See, e.g., Burrow v. Arce,* 997 S.W.2d 229, 232 (Tex.1999) (addressing fee forfeiture claim brought in separate suit).

64. *See McAllister v. Samuels,* 857 S.W.2d 768, 779 (Tex.App.-Houston [14th Dist.] 1993, no writ).

65. *See State & County Mut. Fire Ins. Co. v. Miller,* 52 S.W.3d 693, 696 (Tex.2001) (holding co-parties must assert all their claims if they file cross-claims against each other).

66. *See Malone v. Abraham, Watkins, Nichols & Friend,* —— S.W.3d ——, ——, No. 01–99–01192–CV, 2002 WL 1722337, \*1 (Tex.App.-Houston [1st Dist.] July 24, 2002, no pet. h.).

67. *See Bhalli v. Methodist Hosp.,* 896 S.W.2d 207, 210 (Tex.App.-Houston [1st Dist.] 1995, writ denied).

putes. But sometimes they do not. And when they do not, trial judges must do the best they can to interpret what we have said and follow it. By attempting to settle the claims to attorneys' fees here, the trial judge did nothing more than that.

Until the Supreme Court addresses a post-judgment interpleader after a final appellate mandate, we have only general principles in the current law of jurisdiction and interpleader to guide us. Until then, those principles must come from cases that are distinguishable on the facts, as our dissenting colleagues ably show. But our duty, as intermediate appellate court, is to apply these principles to new factual situations the higher court has yet to address.

Because the trial court had jurisdiction to adjudicate the interpleader filed by Owens–Corning, we grant the law firm's request for reconsideration en banc, affirm the trial court's refusal to dismiss the interpleader, and vacate the panel's judgment to the contrary. But because the trial court abused its discretion in severing the defensive issues related to the law firm's fee claim, we reverse the trial court's judgment and order of severance, and remand to that court for further proceedings consistent with this opinion.[68]

Chief Justice BRISTER is joined by Justices FOWLER, SEYMORE and GUZMAN in the Plurality. Justice EDELMAN concurs in result only. Justice J. HARVEY HUDSON filed a Dissenting opinion and is joined by Justices YATES, ANDERSON, and FROST.

---

**68.** We do not reach the remaining points asserted by Madeksho and the clients (arguing the law firm is not entitled to any fee as a matter of law) as these issues were severed before trial and are not before us.

J. HARVEY HUDSON, Justice, dissenting.

Strict adherence, in this case, to the Supreme Court's mandate seems both harsh and unjust. There can be no question that some or all of the attorneys who labored on behalf of the Malones are now entitled to their attorney fees. However, the issue before us is not whether the trial court correctly apportioned the attorney fees, but whether the court had any authority to do so in light of the Supreme Court's mandate. Because the trial court lacked jurisdiction to consider the attorney fee dispute, I respectfully dissent.

### AN ILLUSORY CONFLICT

The majority invokes this court's en banc authority for the purpose of quieting an alleged conflict in our jurisprudence. The majority cannot point to any explicit conflict in our jurisprudence, but contends a conflict nevertheless has arisen silently in our jurisprudence due to the fact we have previously reviewed post-mandate claims without once indicating any jurisdictional concerns. The majority cites four examples—*Burns v. Bishop*, 48 S.W.3d 459, 467 (Tex.App.-Houston [14th Dist.] 2001, no pet.); *Northshore Bank v. Commercial Credit Corp.*, 668 S.W.2d 787, 789 (Tex.App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.); *Velasquez v. Lunsford*, No. 14–95–00172–CV (Tex.App.-Houston [14th Dist.] September 26, 1996, no writ) (not designated for publication), 1996 WL 544429, at *2; and *First Bank of Lamarque v. Alexander*, No. 14–89–00837–CV, 1990 WL 68486 (Tex.App.-Houston [14th Dist.] 1990, no writ) (not designated for publication).[1] Of course, not all claims are

---

**1.** The *Velasquez* and *Alexander* cases cited above are unpublished decisions that have no precedential value and need not be distinguished. TEX.R.APP. P. 47.7. However, a cursory review of these cases reveals that they do

barred by want of jurisdiction simply because they are "temporally" post-judgment or post-mandate actions—only those that constitute an impermissible collateral attack upon a final judgment are prohibited.

For example, excess supersedeas funds, a judgment award, or a settlement may constitute property that is subject to turn over, attachment, garnishment or seizure to satisfy a judgment creditor. While any action to seize such property is temporally "post-judgment," in the sense that it occurs later in time than the judgment or action that spawned the funds, the court has the same authority to consider the cause as if the judgment creditor were attempting to execute upon a bank deposit, real property, or any other non-exempt asset owned by the judgment debtor. The court's action, in such cases, is not an impermissible "post-judgment" proceeding in the sense that it alters, modifies, or is contrary to the judgment—in fact, it is the validity of the trial court's judgment that makes the funds at issue the property of the judgment debtor and, therefore, subject to garnishment, attachment, etc.

For example, in *Burns v. Bishop*, Burns deposited supersedeas funds into the registry of the 125th District Court pending appeal of a judgment obtained against him by a former business associate. *Burns*, 48

S.W.3d at 461. The judgment affirmed on appeal was for less than the supersedeas funds on deposit with the court. *Id.* at 462. Thus, after the judgment was satisfied, excess supersedeas funds remained in possession of the 125th District Court. *Id.* Before those surplus funds could be returned to Burns, two judgment creditors, who had obtained unrelated judgments in two other district courts, sought garnishment of the surplus funds. *Id.* These conflicting claims were consolidated in, and resolved by, the 177th District Court. *Id.* at 463. Accordingly, the dispute resolved by the 177th District Court was a new action, no different than any other where the plaintiff seeks to attach or garnish non-exempt property or funds of a judgment debtor.

Likewise, in *Northshore Bank*, Frank and Wanda Skatell suffered business reversals and many judgments were taken against them. *See Northshore Bank*, 668 S.W.2d at 788 (citing *Commercial Credit Corp. v. U.S. Fire Ins.*, 630 S.W.2d 651, 652 (Tex.App.-Houston [1st Dist.] 1981, writ ref'd n.r.e.) in which the facts of the first appeal are set forth). The Skatells only significant asset was a claim for theft losses covered by policies from two insurance companies. *Commercial Credit*, 630 S.W.2d at 651–52. The Skatells sued the two insurance companies and obtained a

not stand for the proposition for which they have been cited.

For example, the trial court in *Velasquez* approved a settlement agreement that set forth the amount of attorney fees for each of the plaintiff's lawyers. *Velasquez*, 1996 WL 544429, at *1. Before the judgment was final, a dispute arose among the attorneys, and the trial court severed the matter of attorney fees which it ultimately resolved. *Id.* at *2. Clearly, the trial court took no improper "post-judgment" action; it did not violate its judgment; and it did not violate the mandate of an appellate court.

In *Alexander*, the First Bank of LaMarque initiated a garnishment action to satisfy its

judgment against Alexander in the amount of $21,077. *Alexander*, 1990 WL 68486, at *1. The writ of garnishment was served against Malone Trucking Company which owed Alexander $6,600 under a Galveston court judgment for attorney fees in a prior litigation between Malone Trucking and Alexander. *Id.* Alexander's attorney intervened, and the trial court ultimately awarded the $6,600 to Alexander's attorney. *Id.* Thus, the trial court did not act contrary to its prior judgment or an appellate mandate; rather, it merely considered whether a third-party judgment creditor was entitled to seize non-exempt assets of Alexander, *i.e.*, his judgment award against Malone.

judgment for $82,266.24. *Id.* at 652. The insurance companies appealed. *Id.*

While the judgment was on appeal, five of the Skatells' creditors, apparently sensing the judgment against the insurance companies likely would be upheld on appeal, filed writs of garnishment on the insurance companies. *Id.* The insurance companies, in turn, filed an interpleader requesting that the court divide the money among the creditors. *Id.* Thus, while the subsequent proceedings were *temporally* "post-judgment" in the sense that they occurred *after* the Skatells were awarded a judgment against the insurance companies, the trial court was invested with jurisdiction by the commencement of a new action, *i.e.*, the applications for writs of garnishment and the subsequent interpleader. In this sense, *Northshore Bank* is not an example of improper "post-judgment" action by the trial court. In fact, nothing the trial court did in entertaining the interpleader conflicted with its previous judgment; rather, it was the validity of its previous judgment that suddenly made the insurance companies a target for writs of garnishment, *i.e.*, they became the holders of non-exempt property belonging to the Skatells.[2]

The majority also contends our jurisprudence was muddied by certain ambiguities in *Harris County Children's Protective Services v. Olvera*, 971 S.W.2d 172 (Tex. App.-Houston [14th Dist.] 1998, pet. de-

nied), a case relied upon in our panel opinion. The majority asserts *Olvera* is ambiguous as to whether a trial court lacks *jurisdiction* to act beyond the scope of an appellate mandate or whether it merely commits *error* in doing so.

The holding in *Olvera*, however, was not ambiguous. The issue in *Olvera*, as framed by this Court, was "whether this court's mandate ordering one of the parties to pay all costs on appeal invested the family district court with the *authority* to assess as part of those costs attorney's fees on appeal." *Olvera*, 971 S.W.2d at 173 (emphasis added). In addressing the issue, we observed "this mandate did not confer any *jurisdiction* on the trial court to act in this case ..." *Id.* at 177 (emphasis added). While the Court may have unadvisedly injected the phrase "abused its discretion" in commenting on the trial court's action, we carefully explained the basis for our holding by stating, "the trial court had no *jurisdiction* to make such an award after losing plenary power, and ... this court's mandate ... did not invest the court with *authority* to award attorney's fees as an item of 'costs on appeal.'" *Id.* at 178 (emphasis added).

The majority also avers that *Olvera* is ambiguous because we remanded the cause to the trial court rather than dismissing the appeal as is the usual disposition when there is a want of jurisdiction. However, as we made clear in *Olvera*, the

---

**2.** The distinction between *Northshore Bank* and the *case sub judice* is further illustrated by the fact that there the dispute was manifested by the *formal* filing of a new action, *i.e.*, competing petitions for writs of garnishment; here, the dispute was attested only by *informal* quarreling among the Malones' attorneys. There, a claim was made against the judgment award by *third-party judgment creditors;* here, a claim was made on the basis of an alleged oral agreement that had *not yet been confirmed by a judgment.* There, the judgment debtor filed an interpleader in response to *new actions* filed by the third-party judgment creditors; here, the judgment debtor filed an interpleader in the *same case* to resolve fee disputes among plaintiffs' counsel. There, the trial court's actions *did not violate an appellate mandate* because the plaintiffs' judgment award was simply garnished like any other non-exempt funds belonging to a judgment debtor; here, the trial court's action *violated an appellate mandate* because the plaintiffs' judgment award was divided and distributed contrary to the express terms of the mandate.

Texas Supreme Court has authorized an ad litem attorney to seek attorney fees for an appeal *for the first time on appeal* without regard to the ad litem's ultimate success on the merits. *Cahill v. Lyda,* 826 S.W.2d 932, 933 (Tex.1992) (per curiam). Thus, under the circumstances presented in *Olvera,* the ad litem attorney may have been entitled to attorney fees notwithstanding the want of jurisdiction. Therefore, we remanded the case to the trial court to decide the narrow issue of whether attorney ad litem fees had been incurred on *that* appeal as required by *Cahill. Olvera,* 971 S.W.2d at 178. Accordingly, the basis for our decision in *Olvera* was a want of jurisdiction, not trial court error.

The "conflict" in our jurisprudence alleged by the majority is illusory.[3] Moreover, because there is no conflict in our jurisprudence, there is no legitimate basis for en banc review. Rule 41.2 of the Texas Rules of Appellate Procedure sets forth the circumstances under which the court of appeals may hear a case en banc:

> En banc consideration of a case is not favored and should not be ordered unless necessary to secure or maintain uniformity of the court's decisions or unless extraordinary circumstances require en banc consideration.

TEX.R.APP. 41.2(c).

The rule is clear. There are two bases on which to grant en banc review. Because there is no conflict in our jurisprudence nor extraordinary circumstances requiring a full court review, en banc consideration is not merited here.[4]

### NO JURISDICTION TO EXCEED THE SCOPE OF THE MANDATE

Texas courts derive their authority to act from the Constitution and laws of the State of Texas. *Texas Dept. of Transp. v. Marquez,* 885 S.W.2d 456, 458 (Tex.App.-El Paso 1994, orig. proceeding); *Liberty Mut. Ins. Co. v. Sharp,* 874 S.W.2d 736, 739 (Tex.App.-Austin 1994, writ denied). Thus, all Texas courts are courts of limited jurisdiction in the sense that each court has only such power as the constitution

---

**3.** *See also Financial Ctr., Inc. v. State of Tex.,* No. 14–01–00553–CV (Tex.App.-Houston [14th Dist.] September 26, 2002, no pet.) (not designated for publication), 2002 WL 31126788 (affirming trial court's dismissal of claims for lack of *jurisdiction* when enforcing appellate court mandate); *Contemporary Health Mgmt., Inc. v. Palacios,* 832 S.W.2d 743, 747 (Tex.App.-Houston [14th Dist.] 1992, no writ) (agreeing with appellant that trial court abused its discretion in awarding guardian ad litem fees in addition to previous award and, thus, holding that because case had been remanded for trial court to state good cause for taxing costs, "trial court was without *jurisdiction* to make other modifications to the judgment") (emphasis added).

**4.** The fact that a majority of the en banc court may disagree with a panel is not the standard for en banc review. *Thompson v. State,* 89 S.W.3d 843, 856 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd) (Jennings, J., concurring in denial of rehearing en banc); *Schindler Eleva-*

*tor Corp. v. Anderson,* 78 S.W.3d 392, 424 (Tex.App.-Houston [14th Dist.] 2002), *jdgm't vacated without reference to the merits due to settlement by the parties,* No. 02–0426, (Tex. May 22, 2003) (not designated for publication), 2003 Tex. LEXIS 68. (Frost, J., concurring in denial of rehearing en banc); *see also Olander v. State Farm Mut. Auto. Ins. Co.,* 317 F.3d 807, 813 (8th Cir.2003) (J., Lay, dissenting to rehearing en banc) ("Allowing this case to proceed en banc invites every lawyer in every routine appellate case in this circuit to petition for rehearing en banc without a thought as to the significance of the issue involved or the limited resources of the court. Albeit, the court does not have to grant any petition, but the court must read every petition."). Moreover, "[t]he function of en banc hearings is not to review alleged errors for the benefit of losing litigants." *United States v. Rosciano,* 499 F.2d 173, 174 (7th Cir.1974) (explaining rehearing en banc was improvidently granted and withdrawing order).

and laws enacted thereunder give such court. *Curry v. Wilson*, 853 S.W.2d 40, 51 (Tex.Crim.App.1993); *Martin v. Victoria Indep. Sch. Dist.*, 972 S.W.2d 815, 817 (Tex.App.-Corpus Christi 1998, pet. denied). The test for jurisdiction is whether the court has the power to enter upon an inquiry and not whether its conclusions are correct. *Diocese of Galveston–Houston v. Stone*, 892 S.W.2d 169, 174 (Tex.App.-Houston [14th Dist.] 1994, orig. proceeding).[5]

The subject matter jurisdiction of a district court is, in one respect, defined by the pleadings.[6] Because the courts of this state are not empowered to give advisory opinions,[7] the judgment of a court must conform to the pleadings and the nature of the case proved. TEX.R. CIV. P. 301. In other words, the pleadings invoke the trial court's jurisdiction to render a judgment, and the part of a judgment, which the pleadings do not support is void. *Moreno v. Moore*, 897 S.W.2d 439, 442 (Tex.App.-Corpus Christi 1995, no writ).

Here, the district court initially acquired jurisdiction of this cause when Roy and Mary Malone, Thomas Gillespie, and Patricia Garefalos initiated their suit against Owens–Corning Fiberglass Corporation by filing their petition with the court. Although the original pleadings are not contained in our record, it is clear from the opinions of the First Court of Appeals and the Texas Supreme Court that no issue regarding attorney fees was raised by any party. *See Owens–Corning Fiberglas Corp. v. Malone*, 916 S.W.2d 551 (Tex. App.-Houston [1st Dist.] 1996), *aff'd*, 972 S.W.2d 35 (Tex.1998). Moreover, it likewise appears the trial court's judgment did not award attorney fees to any party.[8] Accordingly, the issue of attorney fees was never before the trial court.

Thirty days after rendering its final judgment, the district court lost its plenary jurisdiction over the cause. TEX.R. CIV. P. 329b; *In re Bokeloh*, 21 S.W.3d 784, 787 (Tex.App.-Houston [14th Dist.] 2000, orig. proceeding). Once a court loses jurisdiction to act, it cannot rise like a phoenix from the ashes and reassert its jurisdiction without statutory authority. *State v. Patrick*, 86 S.W.3d 592, 603 (Tex.Crim.App. 2002). Thus, any judicial action taken after the court's jurisdiction had expired was a nullity. *State ex rel. Latty v. Owens*, 907 S.W.2d 484, 486 (Tex.1995) (per curiam).

### The trial court's authority on remand

The appellate court's mandate is "official notice of the appellate court, directed to

---

**5.** Jurisdiction is the power to hear and determine issues of law and fact involved in a case, and to render a judgment thereon. *In re N.J.A.*, 997 S.W.2d 554, 559 (Tex.1999). The jurisdiction of a district court consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by the Constitution or other law on some other court, tribunal, or administrative body. TEX. CONST. art. V, § 8; *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex.2000).

**6.** It is a fundamental rule that in determining the jurisdiction of the trial court, the allegations of the petition made in good faith are determinative of the cause of action. *Bran-non v. Pacific Employers Ins. Co.*, 148 Tex. 289, 224 S.W.2d 466, 469 (1949).

**7.** *Patterson v. Planned Parenthood of Houston & Southeast Tex., Inc.*, 971 S.W.2d 439, 443 (Tex.1998); *Waite v. Waite*, 64 S.W.3d 217, 223 (Tex.App.-Houston [14th Dist.] 2001, pet. denied).

**8.** Attorney fees are not recoverable on tort claims. *Academy Corp. v. Interior Buildout & Turnkey Constr., Inc.*, 21 S.W.3d 732, 743 (Tex.App.-Houston [14th Dist.] 2000, no pet.); *Metropolitan Life Ins. Co. v. Haney*, 987 S.W.2d 236, 243–44 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). Thus, it would have been inappropriate to award attorney fees against Owens–Corning.

the court below, advising it of the action of the appellate court and directing it to have its judgment duly recognized, obeyed, and executed." *Lewelling v. Bosworth,* 840 S.W.2d 640, 642 (Tex.App.-Dallas 1992, orig. proceeding). When the trial court's judgment is reversed, the appellate court may, in its discretion, remand the case for further proceedings. *Dixie Gas & Fuel Co. v. Jacobs,* 66 S.W.2d 446, 448 (Tex.Civ. App.-Beaumont 1933, writ dism'd). In such cases, the trial court is invested with very limited authority, as defined by the parameters of the mandate, to decide only those issues specified in the appellate court's mandate. *Olvera,* 77 S.W.3d at 343; *V–F Petroleum, Inc. v. A.K. Guthrie Operating Co.,* 792 S.W.2d 508, 510 (Tex. App.-Austin 1990, no writ); *Texacally Joint Venture v. King,* 719 S.W.2d 652, 653 (Tex.App.-Austin 1986, writ ref'd n.r.e.); *Wall v. East Tex. Teachers Credit Union,* 549 S.W.2d 232 (Tex.Civ.App.-Texarkana

1977, writ ref'd); *Seydler v. Keuper,* 133 S.W.2d 189, 190 (Tex.Civ.App.-Austin 1939, writ ref'd).[9] Moreover, the trial court must not exceed the scope of the mandate. *Texacally Joint Venture,* 719 S.W.2d at 653. Thus, when the trial court receives a case on remand, the extent of its "jurisdiction" is simply to fulfill its ministerial duty to execute orders that may be necessary to give effect to an appellate mandate, but no more than is necessary to implement such mandate.[10]

### The trial court's authority on affirmance

When an appellate court affirms the judgment of the trial court or renders a judgment the trial court should have rendered, that judgment becomes the judgment of both courts. *Cook v. Cameron,* 733 S.W.2d 137, 139 (Tex.1987). In other words, the judgment of the trial court

9. *See also Dallas/Fort Worth Int'l Airport Bd. v. City of Irving,* 868 S.W.2d 750, 751 (Tex. 1993) (per curiam) ("Once this court has remanded a cause to a lower court, it has exclusive jurisdiction over the remanded proceedings, and will permit no interference from any court."); *Kahn v. Seely,* 37 S.W.3d 86, 88 (Tex.App.-San Antonio 2000, no pet.) (holding trial court's only authority upon remand was to delete from judgment any amount that was post-dissolution compensation and re-terminate partnership; "[n]owhere was authority granted for trial court to undertake a new accounting . . ."); *Austin Transp. Study Policy Advisory Comm. v. Sierra Club,* 843 S.W.2d 683, 690 (Tex.App.-Austin 1992, writ denied) (stating that in limited remand, trial court has reasonable amount of discretion to comply with mandate); *Lewelling,* 840 S.W.2d at 643 (finding it was necessary for trial court to rule on ancillary matters such as support and visitation after remand from supreme court with instructions to name mother as managing conservator); *Wingfield v. Bryant,* 614 S.W.2d 643, 645 (Tex.Civ.App.-Austin 1981, writ ref'd n.r.e.) (holding trial court only had jurisdiction on remand to enter nunc pro tunc judgment and had no jurisdiction to change judgment in any other manner).

10. *See, e.g., Dallas County v. Sweitzer,* 971 S.W.2d 629, 630 (Tex.App.-Dallas 1998, no pet.) (stating trial court's orders carrying out mandate are ministerial); *Austin Transp. Study Policy Advisory Comm.,* 843 S.W.2d at 690 (stating that in limited remand, trial court has reasonable amount of discretion to comply with mandate); *Martin v. Credit Protection Ass'n, Inc.,* 824 S.W.2d 254, 256–57 (Tex. App.-Dallas 1992, writ dism'd w.o.j.) (finding party was seeking affirmative relief additional to that given in mandate and was not necessary to its implementation); *Bayoud v. Bayoud,* 797 S.W.2d 304, 310 (Tex.App.-Dallas 1990, writ denied) (holding trial court was authorized to order liquidation and distribution of remaining assets because trial court must conduct necessary proceedings to discharge receiver); *Texacally Joint Venture,* 719 S.W.2d at 653–54 (holding trial court did not abuse discretion in allowing party one week to complete transaction in order to fulfill terms of mandate instructing trial court to "enter judgment ordering specific performance of the contract made the basis of this suit").

stands in the same manner as if there had been no appeal. Thus, where, as here, the judgment of the trial court is simply affirmed, there is no reinvestiture of any "jurisdiction" (limited or otherwise) in the trial court. *Harris County Children's Protective Servs. v. Olvera*, 77 S.W.3d 336, 342 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). *See also Schliemann v. Garcia*, 685 S.W.2d 690, 692 (Tex.App.-San Antonio 1984, orig. proceeding) (holding trial court's orders carrying out mandate of affirmance are ministerial); *Los Campeones, Inc. v. Valley Int'l Props., Inc.*, 591 S.W.2d 312, 315 (Tex.Civ.App.-Corpus Christi 1979, no writ) (concluding trial court acted "without jurisdiction" in exercising more than ministerial duties of enforcing mandate of affirmance).[11] Accordingly, "the clerk of the trial court must remove the case from the docket immediately upon return of the mandate from the appellate court, and the trial court must then give effect to the judgment by executing it through proper orders and process." *Los Campeones, Inc.*, 591 S.W.2d at 315; *see also Olvera*, 971 S.W.2d at 175 (quoting *Myers v. Myers*, 515 S.W.2d 334, 335 (Tex. Civ.App.-Houston [1st Dist.] 1974, writ dism'd)) ("When the appellate court affirms a judgment, upon issuance of its mandate the trial court has the duty to give effect to the judgment by executing proper orders."); *Allied Fin. Co. v. Shaw*, 373 S.W.2d 100, 107 (Tex.Civ.App.-Fort Worth 1963, writ ref'd n.r.e.) (stating that once judgment was affirmed, trial court "was without authority to entertain any motion or take any action inconsistent with the mandate of this Court").

### *Void acts or erroneous acts?*

Although acknowledging that a trial court "cannot transgress an appellate mandate," the majority proposes that rather than having no jurisdiction, the trial court merely abused its discretion. The Su-

---

11. This is also the rule in other jurisdictions. *See, e.g., Werborn v. Pinney*, 76 Ala. 291 (1884) (holding that upon supreme court's affirmance of decree, lower court could not issue any order altering or modifying terms of supreme court's judgment); *Spector v. McFate*, 95 Ariz. 88, 89, 387 P.2d 234 (1963) (holding superior court was "absolutely without jurisdiction to render a judgment differing in one jot or tittle from that which [supreme court] directed it to render"); *Griset v. Fair Political Practices Comm'n*, 25 Cal.4th 688, 701, 107 Cal.Rptr.2d 149, 159, 23 P.3d 43, 51 (2001) (holding unqualified affirmance ordinarily sustains judgment and ends litigation; therefore, trial court did not have jurisdiction to reopen case once supreme court's decision became final); *Tidwell Homes, Inc. v. Sharif*, 169 Ga.App. 270–71, 312 S.E.2d 616, 617 (Ga.App.1983), *aff'd*, 252 Ga. 205, 312 S.E.2d 114 (1984) (holding that when final judgment of trial court is affirmed by appellate court, and not remanded to trial court for further proceedings, controversy is at an end; thus, rights of the parties are conclusively adjudicated and further proceedings in trial court are precluded, and judgment of the lower court is in full force and effect, precisely the same as if no appeal had been taken); *Waterhouse v. Iowa Dist. Ct. for Linn County*, 593 N.W.2d 141, 142 (Iowa 1999) (in absence of remand directing further proceedings in trial court, jurisdiction of district court terminates both as to parties and subject matter when district court judgment has been affirmed); *Collins v. Acree*, 614 So.2d 391, 392 (Miss. 1993) (stating that upon issuance of appellate mandate affirming trial court judgment, trial court simply proceeds to enforcement of final judgment and execution of mandate is purely ministerial); *Rosenblum v. Gibbons*, 706 S.W.2d 49, 50–51 (Mo.App.1986) (holding that after affirmance on appeal and issuance of appellate mandate, trial court was without jurisdiction to do anything but that which was necessary to carry out mandate); *Severance v. Ford Motor Co.*, 105 N.C.App. 98, 101, 411 S.E.2d 618, 620 (1992) (stating any trial court action that varies, disregards the appellate court decree, or attempts to postpone its enforcement is beyond trial court's authority and its authority to that effect is a nullity); *Rudolph v. Herman*, 4 S.D. 203, 56 N.W. 122 (1893) (district court no longer had jurisdiction of case after affirmance of dismissal of appeal of case).

preme Court, however, has repeatedly held that a judgment is void when the court rendering judgment had no jurisdiction over the parties or subject matter, no jurisdiction to render judgment, or no capacity to act as a court. *See, e.g., State ex rel. Latty,* 907 S.W.2d at 485; *Mapco, Inc. v. Forrest,* 795 S.W.2d 700, 703 (Tex.1990) (per curiam); *Cook,* 733 S.W.2d at 140; *Browning v. Placke,* 698 S.W.2d 362, 363 (Tex.1985) (per curiam). Here, the only issue in dispute is jurisdiction, and the trial court lost jurisdiction when its plenary power expired thirty days after final judgment, *i.e.,* thirty days after appellant's motion for new trial, if any, was overruled by written order or by operation of law. *See* Tex.R. Civ. P. 329b; *State ex rel. Latty,* 907 S.W.2d at 486 (stating judicial action taken after court's jurisdiction has expired is nullity); *In re T.G.,* 68 S.W.3d 171, 177 (Tex.App.-Houston [1st Dist.] 2002, pet. denied) (same); *Texas Prop. & Cas. Ins. Guar. Ass'n v. De Los Santos,* 47 S.W.3d 584, 588 (Tex.App.-Corpus Christi 2001, no pet.) (same). Therefore, any action taken after the trial court lost its plenary power was void. *State ex rel. Latty,* 907 S.W.2d at 486; *In re T.G.,* 68 S.W.3d at 177; *De Los Santos,* 47 S.W.3d at 588. Moreover, when the Supreme Court affirmed the judgment of the trial court, it did not reinvest the trial court with jurisdiction to address any additional matters. *See Olvera,* 77 S.W.3d at 342.

When discussing a trial court's duty with respect to an appellate mandate, Texas courts frame the issue in terms of jurisdiction.[12] Nevertheless, the majority cites several decisions to support its conclusion that while a trial court may *err* when it acts contrary to or apart from the appellate mandate, its actions are not void for want of *jurisdiction.* However, none of the cases cited by the majority support this assertion.

For example, the majority alleges that *Texas Workers' Compensation Ins. Fund v. Mandlbauer,* 34 S.W.3d 909 (Tex.2000) supports its position, but the majority's reliance is misplaced. In *Mandlbauer,* the plaintiff was allegedly injured while working for his employer. When the Texas Workers' Compensation Insurance Fund denied some of Mandlbauer's medical claims, Mandlbauer appealed to the trial court. The trial court agreed with the Fund, and Mandlbauer appealed to the court of appeals. Finding merit in Mandlbauer's fourth point of error, the court of appeals reversed the trial court's judgment and remanded the cause for a new trial without addressing Mandlbauer's first, second, and third points of error.[13] The Fund appealed to the Texas Supreme Court who reversed the court of appeals and remanded the cause for consideration of Mandlbauer's remaining points of error.[14] The supreme court's mandate also provided the "Texas Workers' Compensation Fund shall recover from Mike Mandlbauer ... the costs in this Court and in the court of appeals." *Mandlbauer,* 34 S.W.3d at 911.

---

12. *Dallas/Fort Worth Int'l Airport Bd.,* 868 S.W.2d at 751; *Olvera,* 77 S.W.3d at 343; *Kahn,* 37 S.W.3d at 88; *Sweitzer,* 971 S.W.2d at 631; *Olvera,* 971 S.W.2d at 178; *Contemporary Health Mgmt., Inc.,* 832 S.W.2d at 747; *Bayoud,* 797 S.W.2d at 310; *V–F Petroleum, Inc.,* 792 S.W.2d at 510; *Texacally Joint Venture,* 719 S.W.2d at 653; *Schliemann,* 685 S.W.2d at 693; *Wingfield,* 614 S.W.2d at 645; *Los Campeones, Inc.,* 591 S.W.2d at 315; *Allied Fin. Co.,* 373 S.W.2d at 107.

13. *Mandlbauer v. Texas Work. Comp. Ins. Fund,* 990 S.W.2d 290, 291 (Tex.App.-Beaumont 1998), *rev'd,* 988 S.W.2d at 751 (Tex. 1999).

14. *Texas Work. Comp. Ins. Fund v. Mandlbauer,* 988 S.W.2d 750, 753 (Tex.1999).

On remand, the court of appeals again reversed the trial court and assessed costs against the Fund as the losing party. The Fund again appealed to the supreme court. The supreme court reversed the court of appeals a second time and remanded the cause for consideration of Mandlbauer's remaining points of error.

The majority suggests the supreme court reversed the court of appeals because the court of appeals ran afoul of its mandate, and that a reversal (as opposed to a dismissal) indicates the issue is one of simple error rather than jurisdiction. However, the supreme court reversed the court of appeals for its erroneous decision regarding the merits of one of Mandlbauer's points of error. The court added, in passing, that the mandate of the court of appeals was ambiguous as to its assessment of costs because it did not expressly limit "costs" to the costs of the appeal on remand and, hence, it could be interpreted as being violative of the supreme court's mandate. Because Mandlbauer lost both his first and second appeals, the supreme court clarified his liability as to costs by stating "[o]ur judgment today awards all costs against Mandlbauer for *all appeals*." *Id.* at 912 (emphasis added). However, the basis for the supreme court's reversal was that the court of appeals erred in finding the trial court abused its discretion in refusing to define a term used in the jury charge. *Id.* Accordingly, the decision has nothing to do with proposition for which it has been cited by the majority.

The majority also relies on *Cook,* 733 S.W.2d 137, but it provides no better support than *Mandlbauer.* In *Cook,* the court considered a divorce decree that awarded Cook thirty-five percent of Cameron's gross military retirement pay. The Texas Supreme Court ultimately affirmed the decree. *Id.* at 138–39. Subsequent to the affirmance, upon Cook's motion to enforce

the judgment, the trial court ordered that Cameron pay to Cook thirty-five percent of his gross military pay. *Id.* at 139. Later, the government started paying Cook directly, but only in an amount equal to thirty-five percent of net disposable military retirement; Cameron refused to pay the difference between the judgment and the government's direct payment. *Id.* The trial court denied Cook's motion to enforce the judgment on the basis that the Uniform Services Former Spouse's Protection Act, 10 U.S.C. § 1408 ("USFSPA") applied to net disposable retirement and the court could not compel payment of gross retirement; the court of appeals affirmed the trial court's order. *Id.*

The Texas Supreme Court held that because it had previously affirmed the trial court's decree of thirty-five percent gross military pay, the trial court's judgment became the judgment of the supreme court and the trial court erred in not enforcing the judgment rendered. *Id.* Recognizing the lower courts' concern that the original judgment was in conflict with USFSPA, the supreme court pointed out that it had affirmed the award of gross pay, and that judgment was final. *Id.* at 140. Thus, the lower courts' refusal to enforce the judgment as written was an improper relitigation of issues already determined in the prior final judgment. *Id.* The supreme court accordingly "render[ed] judgment ordering the trial court to enforce the judgment in *Cameron v. Cameron* awarding Cook thirty-five percent of gross retirement benefits beginning June 25, 1981," and remanded the case "to the trial court solely to determine the amounts owing to Cook." *Id.* at 141. Thus, the issue in *Cook* was the trial court's *refusal to enforce* the supreme court's judgment, not whether the trial court had taken some action beyond the scope of the mandate.

### Observing the literal terms of a mandate

The majority next argues that trial courts have never been required to heed the literal language of an appellate mandate. Thus, while the Texas Supreme Court's mandate here required Owens–Corning to pay "Roy Malone, et al.," the majority cites *Myers v. Myers*, 515 S.W.2d 334 (Tex.Civ.App.-Houston [1st Dist.] 1974, writ dism'd w.o.j.) as support for the position that a mandate directing a party to pay the opposing party may authorize a trial court to pay someone else, *i.e.*, the attorneys. *Myers*, however, never decided this issue.

In *Myers*, a divorce case, Mrs. Myers was awarded $20,000 in attorney fees. Thereafter, Mrs. Myers attempted to execute a property settlement with her husband that would have discharged his obligation to pay her attorney fees, thereby, depriving her attorneys of any compensation. The trial court did not approve the property settlement, but rather signed a judgment awarding to Mrs. Myers, *"for the use and benefit of her attorneys*, the sum of $20,000 as *attorneys' fees."* *Myers*, 503 S.W.2d at 404, 404 (Tex.Civ.App.-Houston [14th Dist.] 1973, writ dism'd w.o.j.) (emphasis added). The judgment was appealed by Mr. Myers. This court held the putative property settlement was never binding because the trial court refused to approve it. Accordingly, the judgment of the trial court was affirmed, and this court issued a mandate of affirmance.

When the trial court obeyed our mandate and awarded Mrs. Myers' attorneys $20,000 in attorney fees, Mr. Myers complained to our sister court by way of another appeal and a writ of mandamus. The First Court of Civil Appeals dismissed the appeal under the theory that (1) the trial court had no jurisdiction to do anything other than obey the Fourteenth Court's mandate, *i.e.*, to pay the attorneys as directed in its mandate, and (2) the court's order was not a final judgment for purposes of appeal. *Myers*, 515 S.W.2d at 335. The court of appeals also denied the petition for mandamus because (1) Mr. Myers did not file a motion for leave to file his petition, (2) it had no jurisdiction over the matter, and (3) the matter was moot. *Id.* at 335–36.

Thus, the facts in *Myers* were unlike the ones presented here. There, both the trial court's judgment and our mandate specifically directed that the attorneys be paid.[15] In fact, *Myers* is consistent with well-established law that the trial court must observe and carry out the mandate of the court of appeals, and its orders carrying out the mandate are ministerial; when in-

---

**15.** The majority cites *Ohio Medical Products, Inc. v. Suber*, 758 S.W.2d 870, 873 (Tex.App.-Houston [14th Dist.] 1988, writ denied) as additional support that a party other than the one named in the mandate can be paid. In *Suber*, the plaintiffs sued the anesthesiologist and the hospital for negligence and medical malpractice, while suing the manufacturers, sellers, and servicers of the anesthesia gas machine for defective product and negligent design. *Id.* at 871. The case went to the jury with Ohmeda as the sole defendant. *Id.* at 872. On appeal, Ohmeda claimed the trial court erred in overruling its motion to reform the judgment to provide for the statutory hospital lien. *Id.* at 873. The court stated the hospital, not Ohmeda, could claim the statutory lien against a judgment in favor of the plaintiffs. *Id.* (citing TEX. PROP.CODE ANN. § 55.002, which provides for a hospital lien on a cause of action or claim of an individual who receives hospital services for injuries caused by accident attributable to the negligence of another person). To secure a lien, a hospital must file written notice of the lien with the clerk of the county in which the injury occurred and such notice must be on file before money is paid to the entitled person. TEX. PROP.CODE ANN. § 55.005. No statutory lien attaching to the judgment in favor of the Malones was at issue in this case.

terpreting the mandate, the trial court looks not only to the mandate itself but also to the appellate court's opinion. *Truck Ins. Exchange v. Robertson*, 89 S.W.3d 261, 263 (Tex.App.-Fort Worth 2002, no pet.). Nothing in *Myers* suggests the trial court need not heed the literal language of the appellate mandate.

### Authority for ancillary acts

The majority also argues that trial courts routinely do a number of things not ordinarily addressed in mandates; thus, their jurisdiction is not limited by the strict terms of an appellate mandate. Three of the examples given by the majority—the adjudication of turnover disputes,[16] the issuance of writs of execution,[17] and deciding motions for contempt and to enforce[18]—all involve the *enforcement or satisfaction of judgments* previously rendered. This is precisely the function of the trial court because it is charged with the duty of enforcing the appellate mandate (if there has been an appeal), and none of these examples are beyond the parameters of an appellate mandate.[19]

The majority further contends the discharge of a judgment lien after bankruptcy is another action a trial court can take that is not addressed in a mandate. *See* TEX. PROP.CODE ANN § 52.022(a) (Vernon 1995) ("The person who has been discharged from his debts, that person's receiver or trustee, or any other interested person may apply, on proof of the discharge, to the court in which the judgment was rendered for an order discharging and canceling the judgment and judgment lien."). A judgment and judgment lien may be discharged and canceled if the person against whom the judgment was rendered is discharged from his debts under federal bankruptcy law. TEX. PROP.CODE ANN. § 52.021 (Vernon 1995). However, the discharge of a judgment after bankruptcy is a specific situation provided by statute, not remotely relevant to the issue of whether the trial court has authority to act beyond the parameters of an appellate mandate.

Finally, the majority contends the trial court has the authority to recalculate prejudgment interest. *See D.S.A. Inc. v. Hillsboro Indep. Sch. Dist.*, 999 S.W.2d 887, 894 (Tex.App.-Waco 1999, pet. denied). In that case, the Texas Supreme Court held the evidence was legally sufficient to support the breach of contract claim and remanded the case to the trial court *to recalculate damages* on a cause of

---

16. *See* TEX CIV. PRAC. & REM.CODE ANN § 31.002 (Vernon Supp.2003) (providing that judgment creditor is entitled to aid from court of appropriate jurisdiction through injunction or other means in order to reach property to obtain *satisfaction of judgment*); *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 224 (Tex. 1991) (explaining that turnover statute is "the procedural device by which judgment creditors may reach assets of a debtor that are otherwise difficult to attach or levy on by ordinary legal process."); *Cross, Kieschnick & Co. v. Johnston*, 892 S.W.2d 435, 438 (Tex. App.-San Antonio 1994, no writ) (stating that turnover statute does not provide for determination of substantive rights).

17. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 34.001–.067 (Vernon 1997) (providing procedures for execution of judgments).

18. *See Cook*, 733 S.W.2d at 139 (stating that party returned to trial court that rendered divorce decree, filing motion for contempt and motion to enforce judgment).

19. The majority observes the trial court has the authority to create, modify, or terminate trusts set up for minors or the incapacitated. *See* TEX PROP.CODE ANN. § 142.001–.007 (Vernon 1995 & Supp.2003) (providing for management of property recovered in suit by next friend). This relates, however, to managing money or property awarded under a judgment for the protection of minors or incapacitated persons.

action for breach of contract. *Id.* at 890. On remand, the trial court calculated the damages differently than it had in the original judgment. The court of appeals specifically held "[t]he trial court has a 'duty to decide the issue [of prejudgment interest] and to render judgment with respect thereon'" and, thus the trial court had the authority to recalculate the prejudgment interest on the judgment. *Id.* at 894 (quoting *Comet Aluminum Co. v. Dibrell,* 450 S.W.2d 56, 58–59 (Tex.1970) (orig.proceeding)). In other words, the trial court did nothing more than enforce the appellate mandate.

### *Trial courts want of authority to apportion attorney fees*

Here, the issue of attorney fees was never before the trial court. Accordingly, when the cause was reviewed by the Texas Supreme Court, no issue regarding attorney fees was before the Supreme Court. Because no issue regarding attorney fees was before the Supreme Court, its mandate resolves no issue regarding attorney fees. Consistent with the absence of any attorney fee issues, the mandate merely says:

> Roy Malone, et al. shall recover from Owens–Corning Fiberglas Corporation and surety Aetna Casualty & Surety Company, who shall pay the costs in this Court and in the court of appeals.

The trial court's plenary jurisdiction expired more than four years prior to its consideration and putative resolution of the attorney fee dispute. When the Supreme Court issued its mandate, it did not remand the cause of action to the trial court; it did not reinvest the trial court with authority to decide any new issue or consider any unresolved points of contention. In fact, the trial court had no more authority to entertain an attorney fee dispute in this case after appeal than it would have had if there had been no appeal. Moreover, the trial court's determination of attorney fees could not conceivably be considered a mere ministerial duty necessary to the implementation of the mandate. Therefore, the trial court lacked jurisdiction to decide the attorney fee dispute and had no authority to award fees to the various attorneys.

### Interpleader

Despite the trial court's lack of jurisdiction to try the attorney fee claims in the face of an unambiguous mandate directing Owens–Corning to pay the Malones, the majority holds the trial court was authorized by Owens–Corning's post-judgment interpleader to apportion the award among the Malones and their various attorneys. While acknowledging that such relief is foreclosed by our holding in *Wong v. Smith,* 537 S.W.2d 468 (Tex.Civ. App.-Houston [14th Dist.] 1976, orig. proceeding), the majority circumvents that obstacle by simply overruling *Wong,* citing several equitable arguments such as (1) Owens–Corning could not have filed its interpleader any earlier than it did because interpleader requires an unconditional tender, (2) the trial court could not release the funds in its registry until after the mandate issued, and thus there is no point in requiring an interpleader to be filed prior to the mandate, and (3) because the law firms might have been able to protect themselves by other remedies, it is foolish to deny the same relief sought by way of an interpleader.

The rule that interpleader is inappropriate after final judgment is not peculiar to Texas; it is the general rule throughout the country. *Wassman v. Travelers Cas. & Sur. Co.,* 797 So.2d 626, 633 (Fla.Dist.Ct. App.2001) (holding law, generally throughout country, is "that in order for a plaintiff

to be entitled to relief by interpleader, he must apply for that relief before a judgment at law has been rendered in favor of any of the claimants to the common fund"); *accord Montgomery v. Travelers Indem. Co.*, 192 So.2d 779, 781 (Fla.Dist.Ct.App. 1966); *Brown v. Wilson,* 56 Ga. 534, 536 (1876) (holding that "[w]hen a bill of interpleader is the proper remedy it should be brought before one of the claimants of the fund has obtained judgment therefor"); *Italiana v. Papa,* 204 Ill.App. 343, 345 (1917) (holding that the stakeholder "having chosen to defend the suit at law, the unreversed judgment in that suit obtained is not subject to attack in a proceeding in equity"); *Phillips v. Taylor,* 148 Md. 157, 129 A. 18, 20 (1925) (holding that "[i]f a stakeholder defends a suit by one claimant and allows it to proceed so far as a judgment against him without filing a bill of interpleader, it then becomes too late for him to do so"); *Eclipse Pioneer Div. of Bendix Aviation Corp. v. Minter,* 35 N.J.Super. 430, 435, 114 A.2d 451, 453 (1955) (holding that "where there are two claims exposing a debtor to double liability, he cannot—once one of the claims is reduced to judgment against him—secure redress by way of interpleader unless he can be relieved of the judgment").

There are several reasons for this rule. First, once a judgment has been taken, the plaintiff is no longer a disinterested stakeholder, but a judgment debtor. *Wassman,* 797 So.2d at 632. Thus, here, the Malones were no longer competing claimants to a fund, but judgment creditors, and the trial court had no power to restrict their collection of the judgment to an interpleader contest. *Id.*

Second, the stakeholder must use reasonable diligence to bring the contending claimants into court, and laches bars him from delaying his application until after an unsuccessful trial against one of them.

*Gonia v. O'Brion,* 223 Mass. 177, 178, 111 N.E. 787, 788 (1916).

Third, the remedy by interpleader is afforded to protect the stakeholder from the annoyance and hazard of two or more actions. "[T]o permit an unsuccessful defendant to compel the successful plaintiffs to interplead, is to increase instead of to diminish the number of suits; to put upon the shoulders of others the burden which he asks may be taken from his own." *McKinney v. Kuhn,* 59 Miss. 186, 188 (1881); *see also American Surety Co. v. Brim,* 175 La. 959, 967, 144 So. 727, 730 (1932). In other words:

> It is the special purpose of a bill of interpleader not only to protect the stakeholder against several suits by two or more claimants, but likewise to save *all the parties* against the cost and annoyance of several independent suits. *Something is due to the claimants in such cases as well as the stakeholder.* The former should not be put to the trouble of litigating their claims twice any more than the latter should be twice rendered liable for the one amount in his hands. A bill of interpleader, seasonably filed, is sufficient to protect all interests alike, and to determine to whom in justice the money should be paid; and if the holder of the money does not choose to avail himself of this safeguard at the proper time, and, on the contrary, puts the parties to the trouble and expense of forcing him to judgment, he has only himself to blame for his predicament. Judgments rendered against him in such case are not unjust judgments for which he is entitled to the intervention of equity, but adjudications provoked by himself with full knowledge of the risks which he incurs.

*Tralles v. Metropolitan Club,* 18 App. D.C. 588, 595–96 (1901) (emphasis added).

Fourth, and most importantly, after the judgment creditor has obtained a final judgment, the filing of an interpleader by the judgment debtor is an impermissible collateral attack upon the judgment. *Wassman,* 797 So.2d at 633 n. 1 (holding that an "interpleader action constitutes a collateral attack on the judgment"); *Eclipse,* 114 A.2d at 453 (holding the inconsistency of two claims does not of itself enable the stakeholder to impugn the verity of the judgment); *American Sur. Co. of New York v. Grays Harbor County,* 187 Wash. 164, 166, 60 P.2d 10, 12 (1936) (holding the filing of an interpleader after final judgment is a collateral attack upon the judgment).

The majority nevertheless contends that by its very nature, the trial court had *quasi in rem* jurisdiction to consider a writ of interpleader because once the funds at issue had been tendered into the registry of the court, it could not "simply toss the money back out the clerk's window." While it would have been imprudent to toss the money out the clerk's window, it could, of course, have been returned to the interpleader. In fact, this is the only appropriate course of action available to the trial court where, as here, it lacked jurisdiction to even consider altering, modifying, or amending the judgment (which was the effect of entertaining a post-judgment interpleader).

The majority's equitable arguments likewise fail because Owens–Corning had no need of equity, and thus no need of an interpleader. The purpose of the interpleader procedure is to relieve an innocent stakeholder of the vexation and expense of multiple litigation and the risk of multiple liability. *Dallas Bank & Trust v. Com-* *monwealth Dev. Corp.,* 686 S.W.2d 226, 230 (Tex.App.-Dallas 1984, writ ref'd n.r.e.). Interpleader is appropriate, therefore, only when the stakeholder is or may be exposed to multiple liability. *Id.*

Here, while Owens–Corning may have been aware of the dispute among the Malones' attorneys, its sole obligation was to pay the Malones. As a defendant in a tort action, Owens–Corning had no obligation to reimburse the Malones for their attorney fees.[20] The Malones had entered into a contingency fee agreement with Madeksho for legal services with respect to their asbestos lawsuit against Owens–Corning, but had entered into no such contract with Ballard. Instead, Ballard's claim, as alleged by Ballard and as tried by the trial court, was against Madeksho for breach of contract for attorney fees. Therefore, the dispute was between Madeksho and Ballard, and did not involve the Malones—the parties to whom Owens–Corning was directed by the supreme court to pay the judgment. Accordingly, there was no possibility that Owens–Corning might be exposed to multiple liability.

The majority also contends that *Wong* prevented Ballard from asserting his breach of contract action against Madeksho in a separate cause of action. I disagree. First, following prior established authority, *Wong* held the trial court could not entertain the interpleader action because the interpleading party knew of the rival claims to the funds in the judgment prior to filing the interpleader. An interpleader action was not necessary here because Owens–Corning was not liable for the attorney fees. Second, Ballard's claim alleged that Madeksho had breached their fee-sharing agreement in the Malones' asbestos case against Owens–Corning; Ballard had no contract with the Malones. Thus, Ballard could have filed a separate

---

20. *Academy Corp.,* 21 S.W.3d at 743; *Haney,* 987 S.W.2d at 243–44.

lawsuit against Madeksho without interfering with the Malones' recovery of their judgment.

The majority further asserts a separate action would deprive Ballard and the law firm of their property rights because they were not mere creditors, but held a property interest in the interim. The majority suggests that if we ignore the law firm's equitable interest and order the entire judgment paid to the clients, Ballard and the law firm will be deprived of their fees. The problem with the majority's position is Ballard's fee arrangement was with Madeksho, not the Malones. Thus, Ballard's remedy was to look to Madeksho for payment for his share of the work performed in the Malones' asbestos case.

Finally, the majority warns that if Owens–Corning is not permitted to maintain an interpleader action, it may find itself in the position of having to pay not only the Malones the full amount of the judgment, but also the fees owed to Ballard and the law firm because a defendant who has knowledge of "a contingency-fee claim by an attorney and yet pays the full judgment to the client" is obligated to pay the fee portion twice—citing *Honeycutt v. Billingsley,* 992 S.W.2d 570, 584 (Tex.App.-Houston [1st Dist.] 1999, pet denied). *Honeycutt,* however, is clearly distinguishable.

In that case, the Honeycutts entered into a contingency fee agreement with Billingsley for legal services for injuries they sustained in an automobile accident. *Id.* at 573. Billingsley referred the case to another attorney and withdrew as attorney of record. *Id.* at 574–75. The defendant settled with the Honeycutts, paying the

Honeycutts the full amount of the judgment. *Id.* at 583. The Honeycutts, however, did not pay Billingsley his fee under the contingency fee agreement. *Id.* Billingsley sought to hold the Honeycutts and the defendant jointly and severally liable for his fee. *Id.*

The court of appeals held that if a client, after having assigned an interest in the case to his attorney, attempts to settle the entire case without the attorney's agreement, the attorney is not bound by the settlement. *Id.* at 584. "If the defendant in the underlying suit has notice of the attorney's interest, the defendant is liable to the attorney, even if he has already paid the client." *Id.* (citing *Galveston H. & S.A. Ry. Co. v. Ginther,* 96 Tex. 295, 72 S.W. 166, 167 (1903)). The court thus reasoned that the defendant's position is the same as any other person paying a debt to the original creditor, instead of an assignee, whose rights were known. *Id.*

Thus, in *Honeycutt,* the defendant paid the Honeycutts pursuant to a *settlement,* not a *judgment,* and the defendant was aware of the attorney's interest in the settlement. *Id.*[21] That is not the situation here. Therefore, *Honeycutt* is inapplicable, and is limited to facts where the defendant has *settled* with the plaintiff, but pays the full amount of the judgment to the plaintiff knowing that the plaintiff's attorney has a claim to a portion of the amount paid. *Honeycutt,* 992 S.W.2d at 584. Here, judgment was rendered after a full jury trial and appeals to the First Court of Appeals and the Texas Supreme Court with the issuance of a mandate ordering Owens–Corning to pay the Malones; there was no settlement between

---

**21.** *Galveston H. & S.A. Railway Company,* cited by the court in *Honeycutt,* similarly involved facts where the plaintiff had assigned an interest in his claim against the defendant to his attorneys. 72 S.W. at 167. The attor-neys' right to be paid in the settlement was not defeated by the defendant's payment to the plaintiff when the defendant knew of the attorneys' right to payment. *Id.*

Owens–Corning and the Malones that operated to deprive Ballard and the law firm of their fees.

### CONCLUSION

"It is better that the law should be certain than that every judge should speculate upon improvements in it." [22] While the majority reaches a fair result, I fear it has been achieved by violence to the jurisprudence of both this Court and others. If not rectified by the Texas Supreme Court, there will be no finality in the law. Our appellate mandates will not mark the end of litigation. Rather, there will be new issues raised in the trial court after our mandate has issued, and new appeals arising from the trial court's post-mandate proceedings.

For these reasons, I respectfully dissent.

---

**22.** *McKenna v. Austin,* 134 F.2d 659, 673 (D.C.Cir.1943) (Stephens, J., dissenting) (quoting Lord Eldon).