**TRINITY RIVER AUTHORITY OF TEXAS, Appellant,**

v.

**Bill BADDERS, Appellee.**

**No. 351.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

April 1, 1970.

Rehearing Denied May 6, 1970.

Lloyd C. Martin, Huntsville, for appellant.

C. A. Keeling, Badders & Keeling, Nacogdoches, for appellee.

TUNKS, Chief Justice.

The appellant, Trinity River Authority of Texas, was created by act of the legislature as a "governmental agency of the State of Texas and a body politic and corporate." Article 8280–188, Vernon's Ann. Tex.St. It is a conservation and reclamation district. For several years it has been acquiring land in connection with the creation of Lake Livingston on the Trinity River. It has the power of eminent domain. The appellant will sometimes be called T.R.A. in this opinion.

In May, 1967, John Douglas Bell and his mother, Louise K. Bell, neither of whom are parties to this suit, owned a tract of land in Trinity County, Texas. On May 3, 1967, T.R.A. offered the Bells $64,771 for 286.7 acres of their land. The Bells did not accept the offer. After some negotiation between the Bells and T.R.A., during which no agreement was reached, the Bells hired an attorney, Mr. R. F. Evans, to represent them in the matter. This employment is evidenced by a written contract signed by the Bells and Mr. Evans dated August 25, 1967. The contract in part stated:

"* * * we, the said LOUISE K. BELL and JOHN DOUGLAS BELL, have employed R. F. Evans, attorney at law of Groveton, Texas, as our attorney to represent us and to prosecute, or defend, any and/or all of our certain claim, or claims, that we have, or may have against the said Trinity River Authority, or others and their successors or assigns.

"And we hereby fully authorize and empower our said attorney to bring suit, or suits, on our said claim, or claims, if necessary, and to prosecute, or defend, same to final judgment, or judgments, and to compromise and settle our said claim, or claims, with or without suit, in any way or manner that he may deem

adviseable. However, it is understood and agreed that our said attorney will not finally settle, or compromise, our said claim, or claims, without first consulting us.

"For and in consideration of the services rendered us and to be rendered us by our said attorney, R. F. Evans, we hereby agree and obligate ourselves to give and allow him, as compensation herein, thirty (30%) per cent of any and/or all amounts received by us as damages recovered from the said Trinity River Authority, or its successors, and others, over and above, and in excess of, the amounts originally offered to us by said Authority, and others, as its firm offer heretofore made as compensation for damages inflicted by its actions, or omissions, upon our said lands, and we do hereby sell, transfer, assign and convey to our said attorney, R. F. Evans, a thirty (30%) per cent undivided interest in and to our said claim for damages, or claims for damages, as above set out and clarified, against all of the said Trinity River Authority, its successors and assigns, and others, whether the same is settled with or without suit, * * *."

A few months after he was so employed by the Bells, Mr. Evans died as the result of a hunting accident. Soon after Mr. Evans' death his widow and his son introduced Mr. Bill Badders, an attorney of Nacogdoches, Texas, to the Bells and recommended that he be employed to continue the matter of the representation of the Bells in their claim against T.R.A. The Bells accepted this recommendation and did so employ Mr. Badders. This employment is evidenced by a written memorandum on the back of the original contract between the Bells and Mr. Evans. It reads as follows:

"We Mrs. Louise K. Bell & Son John Douglas Bell do hereby employ Bill Badders of Nacodoches to represent us in any claim we have, could have or might have against the Trinity River Authority,

on the same terms that we previously employed Mr. R. F. Evans & a copy of our agreement with Mr. Evans is actually on the back of this page & is incorporated herein for a specific description of our contract with Mr. Evans.

"/s/ Rush F. Evans, Jr.
witness to signatures of
Doug & Mrs. Bell
/s/ Mrs. Louise K. Bell"
/s/ John Douglas Bell

The R. F. Evans, Jr. who witnessed the contract is the son of the attorney who formerly represented the Bells.

On January 26, 1968, Badders notified T.R.A. that he had been employed to represent the Bells and furnished it a copy of his contract of employment. Badders then entered into negotiations with T.R.A. in an effort to settle the claim. Following those negotiations T.R.A. made an offer to Badders of about $100,000 for the property in question. This offer was communicated to the Bells. It was neither accepted nor rejected.

On October 9, 1968, the Bells wrote a letter to Badders in which they stated that they had terminated his employment and asked to be billed for the services rendered as of that date. On October 18, 1968, Badders replied by a letter to the Bells in which he stated that he was still representing them under the terms of his written contract. He asked the Bells to let him know their response to the $100,000 offer that had been made and invited them to come to his office to discuss the matter. He also requested that they forward to him any process that they might receive in connection with the contemplated condemnation proceedings.

In December, 1968, T.R.A. filed a condemnation suit against the Bells seeking the acquisition of the property in question. The Bells did not forward to Badders the citation which they received in that case nor otherwise inform him of its having been filed. Rather, John Douglas Bell contacted an agent of T.R.A. and stated that he wished to settle the matter without litigation. Bell told the T.R.A. agent that Badders was no longer representing them in the matter of their claim. Negotiations between John Douglas Bell and the T.R.A. agents continued over a period of approximately three months. As a result of those negotiations on March 10, 1969, John Douglas Bell, who had by then acquired his mother's interest in the land in question, conveyed the property to T.R.A. by deed for a consideration of $101,611. At no time during the course of these negotiations did the T.R.A. agents notify Badders that they were negotiating directly with Bell, nor did they seek confirmation from Badders that he was no longer representing the Bells. During the course of these negotiations T.R.A.'s agents had actual knowledge of the contractual agreement between the Bells and Badders. It was not until after March 10, 1969, the date the land was conveyed, that Badders learned of the agreement reached by Bell and T.R.A.

Badders filed this suit against T.R.A. to recover from it that portion of the consideration paid for the Bell property which had been assigned to him in his contract with the Bells. Both parties filed motions for summary judgment. From the depositions of some of the T.R.A. agents and affidavits filed in support of the motions for summary judgment, the above facts were established. The trial court overruled the motion for summary judgment of T.R.A. and granted that of Badders. Judgment was rendered in favor of Badders for $11,052 together with interest to the date of trial. The amount of the judgment represented 30% of the sum by which the consideration paid to Bell for his property exceeded the original offer made to the Bells by T.R.A. T.R.A. has perfected its appeal from that judgment.

It is the position of T.R.A. on this appeal that the trial court's judgment against it was error because it is protected by the doctrine of governmental immunity. Two

different aspects of the doctrine of the governmental immunity are asserted in appellant's brief. First it is claimed that this suit against it might not be maintained without its consent. Second, it is claimed that even if its consent to be sued were granted, nevertheless the doctrine of governmental immunity would protect it from liability on the claim asserted.

■ In oral argument before this Court the attorney for T.R.A. stated that appellant abandoned the argument made in its brief that the trial court's judgment was erroneous because T.R.A. had not consented to being sued. In this connection it might be noted that T.R.A. had filed suit to condemn the land in question. The filing of such suit not only constituted a consent for the judicial assertion of the claim of which Badders is claiming an interest but made it necessary that such claim be asserted. In Missouri Pacific Ry. Co. v. Brownsville Navigation District, 445 S.W. 2d 818, the Corpus Christi Court of Civil Appeals held that a governmental agency could not be sued upon a contract without its consent. The Supreme Court has granted a writ of error on a point questioning the necessity of such consent to be sued. As of this date that matter is pending unanswered in the Supreme Court. It is, of course, possible that the Supreme Court could hold that consent to be sued was not necessary in the Brownsville Navigation District case without such holding being controlling on the question of necessity of consent in this case. Nevertheless, we are of the opinion that the T.R.A. has given its consent to be sued on this claim by the filing of the suit to condemn the property in question which suit was ultimately settled by compromise and the acquisition of the property in question.

■ The appellant's contention that it was protected from liability by the doctrine of governmental immunity, whether it had or had not given its consent to be sued, is overruled. In this respect the appellant treats the appellee's suit against it as a suit in tort for the wrongful interference with contractual or business relationships. See Clements v. Withers (Tex.Sup.Ct.), 437 S.W.2d 818. It is true that the allegations of fact in the plaintiff's petition in the trial court would sustain a recovery in tort against the appellant for wrongful interference with contractual relationships if such suit were properly maintainable. The plaintiff's allegations are not, however, limited to that theory of recovery. The facts alleged also sustain a recovery for property taken under the terms of Article 1, Sec. 17, of the Constitution of the State of Texas, Vernon's Ann.St. Of course the doctrine of governmental immunity does not protect the appellant from liability on a claim of the latter character. State v. Hale, 136 Tex. 29, 146 S.W.2d 731.

The cause of action asserted by Badders in this suit against T.R.A. is for compensation for the taking of the Bells' land. The Bells, by their contract with Badders, assigned to the latter, a part of their cause of action to be compensated for the taking of their property. Mandell & Wright v. Thomas (Tex.Sup.Ct.), 441 S.W.2d 841. Speaking of a similar contract, the Texas Supreme Court in Galveston, H. & S. A. Ry. Co. v. Ginther, 96 Tex. 295, 72 S.W. 166 at p. 167, said:

"The instrument plainly expressed the intention to assign an interest in a cause of action of which a judgment or compromise was to be the measure, and the expression of this intention in any language was all that was required to make an assignment, as contradistinguished from a mere agreement to pay so much as a contingent fee. * * * While the contract may have left the plaintiff free to compromise, it gave the assignees an interest in the claim which they had the right to have paid in the settlement. This right, when the defendant knew of its existence, could not be defeated by payment to the plaintiff. The position of defendant was that of any other person paying a debt to the original creditor,

instead of an assignee, whose rights were known."

■ If the condemnation suit to acquire the Bells' land, filed in the county court of Trinity County by T.R.A., had proceeded to trial and judgment there can be no doubt that a part of the damages awarded for the taking of the land would have belonged to Badders. When that suit was settled, without Badders' knowledge or consent, Badders had the option to ratify that settlement and proceed against T.R.A. for his assigned portion of the damages payable. Galveston H. & S. A. Ry. Co. v. Ginther, supra; Gibson v. Texas Pac. Coal Co. (Tex.Com.App.), 266 S.W. 137. His suit was not restricted to a claim founded on tort, but was one for his assigned portion of the damages payable under Article 1, Sec. 17, of the Texas Constitution, for the taking of the Bell property by T.R.A. Litigation of the issues relating to the recovery of those damages was not only consented to but also made necessary by the filing of the condemnation suit. The compromise of that suit did not change the character of Badders' claim. He is asserting in this suit just what he would have been asserting, within the contemplation of all of the parties, if the condemnation suit had proceeded to trial and judgment. We cannot see that the conduct of T.R.A. which made necessary the change of the court in which to litigate that issue either changes the nature of the claim or requires further consent by T.R.A. that it be litigated. See Anderson, Clayton & Co. v. State ex rel. Allred (Tex.Com.App., opinion adopted), 122 Tex. 530, 62 S.W.2d 107.

■ Appellant points to error in the judgment of the trial court in that there is a question of fact as to what portion of the assigned interest in the damages payable for the taking of the Bells' property is payable to the representative of the estate of R. F. Evans, deceased. That point of error is sustained.

By one contract the Bells assigned to R. F. Evans an interest in their cause of action. By another contract they assigned similar interest to Badders. It is obvious that neither the Bells, Badders nor the widow and son of Evans intended that those transactions constitute assignments of a separate 30% interest in the increase of the recovery to each of the two lawyers. There is no evidence that the representative of Evans' estate has assigned to Badders the interest in the recovery which that estate owns. Before T.R.A. can be required to pay the attorneys that portion of the damages for the taking of the Bell property which has been assigned to and belongs to the attorneys, it is entitled to be protected from a possible duplicate claim by the Evans' estate. There is apparently a friendly relationship between Badders and the Evans family and it is possible that the proportional participation in the sum payable can be adjusted amicably. If so, a disclaimer or assignment executed by the lawful representatives of the estate may be filed in this case. Otherwise, the representative of the estate should be made a party to this suit so that T.R.A. may be protected by the assurance that it is paying the money owed by it to the rightful owner or owners thereof.

■ Appellant also points to error in the trial court's judgment in that it provided for the levy of execution against T.R.A. Appellee has conceded error in this respect. The appellant, a political subdivision, is exempt from execution. National Surety Corp. v. Friendswood Independent School District (Tex.Sup.Ct.), 433 S.W.2d 690.

For the reasons stated the judgment of the trial court is reversed and the case remanded to the trial court.