**Opinion issued February 20, 2014.**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-12-00979-CV, NO. 01-13-00563-CV**

———————————

**JOEL D. MALLORY, JR., Appellant**

**V.**

**ARCTIC PIPE INSPECTION COMPANY, INC., Appellee;**

**JOEL D. MALLORY, JR., Appellant**

**V.**

**LOCKER & LEE, P.C., Appellee**

**On Appeal from the 129th District Court**
**Harris County, Texas**
**Trial Court Case Nos. 2004-06321-A, 2004-06321-B**

**MEMORANDUM OPINION**

In two separate interlocutory appeals, Joel D. Mallory contends that the trial court erred by granting summary judgment to Locker & Lee, P.C. and later to Arctic Pipe Inspection Company, Inc. on claims related to their failure to protect Mallory's interest in a personal injury lawsuit settlement. In four issues, Mallory complains that the trial court erred by (1) granting traditional and no-evidence summary judgment to Locker, (2) granting adoptive summary judgment to Arctic, (3) denying Mallory's partial summary judgment motion against Arctic, and (4) granting Arctic's motion for severance. We affirm.

## Background

Mallory, an attorney, collaborated with Barbara Hudson to work on a personal injury lawsuit. Mallory filed these appeals against his client's opponents, their attorneys, and their insurance provider for failing to protect his contingency fee interest in the lawsuit's settlement. Specifically, Mallory alleges that Arctic and Locker conspired to exclude him from obtaining his rightful share of the settlement as stipulated in a joint venture agreement with Hudson.[1]

Over 12 years ago, John McKelvey was injured in the course of his duties as an Arctic employee. McKelvey and his wife hired Hudson as their attorney to pursue their claims against Arctic. They retained Hudson on a contingency fee

---

[1] Mallory also named as defendants Barbara Jackson Hudson, Richard L. Howell, and ACE American Insurance Company. On appeal, however, Mallory only challenges the trial court's order granting summary judgment to Locker and Arctic.

basis, granting Hudson authority to pursue all claims and suits related to their claims and to hire "[a]ttorneys to be paid . . . with no additional expenses to [the McKelveys] by way of promise or guarantees as to the outcome or settlement of this claim." The McKelveys also conveyed and assigned Hudson a one-third interest in their claims and the gross amount received in settlement if the matter were settled without a suit. Alternatively, Hudson would receive 40 percent of the judgment obtained or amount received for the case if a suit was filed.

Hudson partnered with Mallory on various legal matters. About one year after the McKelveys retained Hudson, she informed them that Mallory would be working on their case. Another year later, Hudson and Mallory confirmed this agreement in a joint venture to handle the McKelvey case. In the agreement, Hudson and Mallory divided the anticipated attorney's fees as follows: Hudson would take 60 percent and Mallory would take 40 percent of Hudson's contingency fee.

For two years, Mallory worked on the McKelvey case. Mallory propounded discovery, responded to discovery, prepared pleadings and correspondence, designated experts, conducted research, participated in depositions, and attended meetings with the McKelveys, opposing counsel, and other interested parties. But Mallory disappointed Hudson with his performance. According to Hudson, Mallory's work was marked by "sloppiness . . . incompleteness, [and] disappearing

acts . . . ." Because of Mallory's poor performance, Hudson terminated the joint-venture agreement and referred the McKelvey case to Richard Howell. The McKelveys executed a new fee agreement with Hudson. Thereafter, Hudson and Howell jointly represented the McKelveys. Eight months later, the McKelvey litigation settled.

A few weeks after the settlement, Mallory sent a letter to Arctic's counsel, Locker, claiming "a contractual interest in the outcome" of the McKelvey case and asking to have his name included on any check issued in the case. Locker requested that Mallory provide a copy of the contract that gave him an interest in the McKelvey case. Mallory did not send a copy of his joint venture agreement with Hudson or Hudson's contingency fee agreement with McKelvey. Nor did he provide any documentation supporting a fee interest in the McKelvey case. Locker also asked Howell for documentation of his fee arrangement with McKelvey; Howell assured Locker that Mallory had no fee interest in the case.

As a part of the settlement, Locker requested Hudson to indemnify Arctic against any legal action that Mallory might initiate, and Hudson did so. Assured that Mallory had no interest in the McKelvey case, the parties formally settled without including Mallory on the settlement check. Hudson later notified Mallory that a formal settlement had been reached and that he had no interest in the settlement.

Upon receiving notice that he was not included in the settlement, Mallory filed a lawsuit against Locker and Arctic, alleging breach of contract, defamation, tortious interference, and civil conspiracy. Mallory claimed that Arctic and Locker wrongly disregarded his contractual interest in the McKelvey settlement. Specifically, he alleged that Arctic and Locker knowingly interfered with his fee interest, "intentionally participated in efforts to cut him out," and engaged in a civil conspiracy. The trial court granted Locker's traditional and no-evidence summary judgment motions against Mallory. Arctic later moved to adopt Locker's traditional summary judgment. The trial court granted summary judgment and severed the claims against Arctic.

Mallory timely appealed both summary judgment orders.

## Summary Judgment

In his first issue, Mallory contends that the trial court erred by granting traditional and no-evidence summary judgment in Locker's favor. He argues that Locker's motions did not meet the requirements of Texas Rule of Civil Procedure 166a(c) because they failed to "present . . . grounds in a specific manner as to define the issue and to provide adequate information for its opposition."

### A.    Standard of review

We review a trial court's grant of summary judgment de novo. TEX. R. CIV. P. 166a; *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844,

848 (Tex. 2009). When a defendant challenges the propriety of both traditional and no-evidence summary judgments, we typically review first the no-evidence motion. *See Parker v. Valerus Compression Services, LP*, 365 S.W.3d 61 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). In this case, however, both appellees were granted traditional summary judgment—Locker through its own motion and Arctic by adopting Locker's traditional summary judgment motion—therefore, we consider the traditional summary judgment first because it presents the possibility of resolving the appeal as to all parties.

To prevail on a motion for traditional summary judgment, the movant must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Fielding*, 289 S.W.3d at 848.

## B. Traditional summary judgment

Mallory argues that Locker's motion stated legally insufficient grounds for relief on all of his claims and that the motion "was riddled with unsupported legal and factual conclusions." He argues that summary judgment was improper because the evidence raised genuine questions of material facts.

Summary judgment is proper if, having viewed all of the pleadings as true and all of the evidence in the light most favorable to the non-movant, there are no genuine issues of material fact. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). In reviewing the evidence in a light most favorable to the non-

movant, "[a] genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced." *Id*. An issue of material fact may be established by direct or circumstantial evidence. *Id*. at 601 (citing *Lozano v. Lozano*, 52 S.W.3d 141, 149 (Tex. 2001)). If evidence transcends "mere suspicion," it raises a genuine issue of material fact; but evidence that is "so slight as to make any inference a guess is in legal effect no evidence." *Id*. When the order granting summary judgment does not specify the grounds on which it was granted, we must affirm the summary judgment if any of the asserted grounds are meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex. 2000).

In its motion for traditional summary judgment, Locker asserted four reasons why Mallory's claims failed as a matter of law: (1) Mallory did not have an assignment of a property interest—he had a fee-sharing agreement with Hudson; (2) it owed no duty to Mallory to protect his interest in the settlement because Mallory had no property interest; (3) it committed no unlawful acts that would constitute civil conspiracy; and (4) without any intentional conduct aimed at harming Mallory, there was no basis for imposing exemplary damages against Locker.

Whether Locker's motion for summary judgment was properly granted turns first upon whether there was more than a scintilla of evidence that Mallory had a

7

property interest in the settlement. If Mallory had no property interest, Locker did not have a corresponding duty to protect Mallory's alleged interest in the settlement.

### 1. Mallory had no property interest in the settlement

Mallory argues that his joint venture agreement with Hudson gave him a contractual interest in the settlement itself. Mallory also argues he had an "enforceable and protected equitable interest" that he could enforce against Locker for the legal services he provided. Locker agrees Hudson and Mallory had a joint venture agreement; it disagrees, however, that the joint venture agreement granted Mallory a property right in the McKelvey settlement.

### (a) Mallory had no contractual interest in the settlement

Mallory relies on *Brown v. Cole*, 291 S.W.2d 704, 709 (Tex. 1956), to argue that his joint venture agreement with Hudson created a partnership and that he and Hudson had a "shared community of interest." In addition to the shared community of interest, Mallory argues he also had an interest in the McKelvey settlement.

Mallory cites several cases to support his contention that his joint venture agreement with Hudson gave him not only a claim against his "partner," but also against Locker for not protecting his contingent fee interest. The cases he cites involve claims against either a lawyer who promised a portion of his fee to another lawyer or a client who contracted to pay a contingency fee. *See, e.g.*, *Madeksho v.*

8

*Abraham, Watkins, Nichols & Friend*, 112 S.W.3d 679 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (disputing attorneys challenge division of settlement fees); *Robert L. Crill, Inc. v. Bond*, 76 S.W.3d 411 (Tex. App.—Dallas 2001, pet. denied) (referring lawyer sued referred lawyer to recover settlement fees); *Honeycutt v. Billingsley*, 992 S.W.2d 570 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (claim by plaintiffs' original attorney against client for portion of attorney's fees after attorney was discharged). In each case, the attorney bringing the suit had a contingency fee agreement with a client—not another attorney—and filed suit against the other attorney to recover his alleged share of the fees.

Mallory did not have a contingent fee agreement with the McKelveys. Mallory also did not have a direct contract with the McKelveys conveying any interest in fees. Rather, the joint venture agreement was between Mallory and Hudson and gave Mallory a share of Hudson's fees. Mallory presents no evidence that the joint venture agreement gave him a contingent fee interest in the settlement itself rather than a claim against Hudson for his share of the collected contingency fee. [2]

---

[2] Mallory argues that Hudson's repudiation of their joint venture agreement did not disrupt his contractual interest and, therefore, under *Honeycutt*, his contractual interest in the settlement persists. *See Honeycutt v. Billingsley*, 992 S.W.2d 570 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (upholding jury finding that referral agreement did not expressly "extinguish" rights under original contingency fee agreement.). Mallory, however, did not have a contingency fee agreement with the McKelveys.

We conclude that Mallory did not have an interest in the McKelvey settlement because Mallory did not have a contingent fee agreement with the McKelveys and Hudson did not assign her contingent interest to Mallory. *Cf. Travelers Fire Ins. Co. v. Steinmann*, 276 S.W.2d 849, 851 (Tex. Civ. App.—Dallas 1955, writ ref'd) ("When a plaintiff assigns an interest in his cause of action to his attorney and the defendant has notice of the assignment, the defendant must include the attorney in any settlement; he may not settle with the plaintiff alone without making himself liable to the attorney also.").

### (b) Mallory had no equitable interest in the settlement

Mallory argues that, even if the joint venture agreement did not grant him a legal interest in the settlement, he had an equitable interest in it because he "provided professional services by instigating the lawsuit and litigating it . . . ." He also argues that he did not need a written contract with McKelvey to have an equitable interest in the settlement because courts may enforce an "oral fee sharing/joint venture agreement."

Mallory relies on *Madeksho v. Abraham, Watkins, Nichols & Friend*, where the court of appeals upheld an oral agreement between lawyers to divide contingency fees. 112 S.W.3d at 681. The facts here are distinguishable. In *Madeksho*, two lawyers who had partnered together for over 20 years disputed an oral agreement between them to share contingency fees. *Id.* By contrast, the

10

dispute here is between a plaintiff's attorney, his client's defendants, and the defendants' attorneys. Even assuming Mallory had an equitable interest in the settlement, his remedy is to bring a claim against Hudson, not Locker. *See Madeksho*, 112 S.W.3d at 681–82. Because Mallory presents no evidence that the McKelveys granted him a contingent interest in the settlement, we conclude that Mallory had no equitable interest in the McKelvey settlement that can be enforced against those who funded the settlement.

### 2. Locker had no duty to protect Mallory's alleged interest in the settlement

Mallory next argues that Locker breached its duty to him by not protecting his contractual interest when brokering the settlement. Specifically, Mallory alleges that Locker tortiously interfered with his interest, engaged in a civil conspiracy to exclude him from the settlement, and acted negligently in doing so.

When a defendant has notice of an attorney's assigned interest in the settlement proceeds and fails to protect that interest, the defendant remains liable to the attorney for the amount of the assigned interest. *See Honeycutt*, 992 S.W.2d at 584–85; *Steinmann*, 276 S.W.2d at 851; *and Trinity River Auth. of Tex. v. Badders*, 453 S.W.2d 304, 308–09 (Tex. Civ. App.—Houston [14th Dist.] 1970, no writ) (all involving defendants who ignored an attorney's contingent fee contract with plaintiff and were found liable for attorney's share of fees). However, when an attorney does not have a demonstrated property interest, a defendant does not have

a duty to protect an alleged interest in a fee-sharing agreement between other attorneys. *See Madeksho*, 112 S.W.3d at 689. We have already determined that Mallory did not have a property interest in the settlement. Without a property interest in the settlement, Locker had no duty to protect Mallory's fee-sharing agreement with Hudson.

Despite the absence of a property interest in the settlement, Mallory argues that Locker owed him a duty not to tortiously interfere with his alleged interests. *See Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77–78 (Tex. 2000). Mallory, however, does not address how Locker's actions constrained his right to enforce his contractual interest in his fee-sharing agreement with Hudson. Nor does Mallory offer any legal basis to demonstrate that Locker owed him a duty to protect his contractual interests. Without a duty to protect his interests, Mallory's negligence claim fails as a matter of law. *Honeycutt*, 992 S.W.2d at 584; *Trinity River Auth. of Tex.*, 453 S.W.2d at 308–09.

Locker did not owe Mallory a duty to protect his alleged interest in the settlement, and Mallory has not demonstrated that Locker interfered with his interest in the fee-sharing agreement with Hudson. Accordingly, we hold that the trial court properly granted traditional summary judgment in Locker's favor.

We overrule Mallory's first issue.

**Adopted Summary Judgment**

In his second issue, Mallory contends that the trial court improperly granted Arctic's motion to adopt the traditional summary judgment that it granted to Locker. Mallory contends that there is an "irreconcilable conflict between Rule 166a(c) and Rule 58" and that rule 166a(c) should take precedence. Mallory insists that the specificity requirement of rule 166a(c) precludes a co-party from adopting another party's summary judgment motion.

When a party attacks an opponent's motion for summary judgment on specificity grounds, a special exception is required. *Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 784 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 342 (Tex. 1993) ("An exception is required should a non-movant wish to complain on appeal that the grounds relied on by the movant were unclear or ambiguous."). To preserve the issue for appeal, the excepting party must obtain a ruling on the special exception. *McConnell*, 858 S.W.2d at 343, n.7; *Dolcefino v. Randolph*, 19 S.W.3d 906, 925 (Tex. App.—Houston [14th Dist.] 2000, pet denied).

In his response to Arctic's motion to adopt and join the summary judgment granted to Locker, Mallory did not challenge the adoptive summary judgment

procedure. Mallory, therefore, waived his right to challenge the appropriateness of adoptive summary judgment.[3] *See Franco*, 154 S.W.3d at 785.

We overrule Mallory's second issue.

## Mallory's Partial Summary Judgment Motion

In his third issue, Mallory contends that the trial court improperly denied his partial summary judgment motion against Arctic. He contends that he proved his property interest in the settlement as a matter of law.

We have already concluded that Mallory did not have a property interest in the McKelvey settlement. Mallory, therefore, did not establish his interest in the settlement as a matter of law. We conclude the trial court properly denied Mallory's motion for partial summary judgment against Arctic.

We overrule Mallory's third issue.

## Severance

In his fourth issue, Mallory contends that the trial court abused its discretion by granting Arctic's severance motion. He contends that he did not receive timely notice of the motion to sever and that his case "has too many interloping and interwoven issues for a severance to be proper."

---

[3] Even assuming Mallory had preserved the issue, the process of adoptive summary judgment is well-established. Under Texas Rule of Civil Procedure 58, a party may adopt a co-party's pleadings by reference. TEX. R. CIV. P. 58; *see, e.g.*, *Lockett v. HB Zachary Co.*, 285 S.W.3d 63, 73 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (holding adoptive summary judgment was properly granted when summary judgment grounds were same for both parties).

## A. Standard of review

Rule 41 of the Texas Rules of Civil Procedure states that "[a]ny claim against a party may be severed and proceeded with separately." TEX. R. CIV. P. 41. We review a trial court's ruling on a severance order for an abuse of discretion. *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990). A trial court abuses its discretion when it acts arbitrarily or unreasonably, does not refer to guiding rules or principles, or clearly fails to analyze or correctly apply the law. *Runcie v. Foley,* 274 S.W.3d 232, 233 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

## B. Mallory waived his right to challenge the trial court's ruling

Mallory fails to show that the severance harmed him. He has presented and we have considered all of his legal arguments and evidence. Mallory did not respond substantively to Arctic's third motion for severance; Mallory complained only that he did not receive timely notice of the motion. He did not challenge the appropriateness of the motion nor did he argue any substantive grounds for denying Arctic's motion. Mallory, therefore, waived his right to challenge the severance on appeal.

We overrule Mallory's fourth issue.

## Conclusion

Having overruled all of Mallory's issues, we affirm.

Harvey Brown
Justice

Panel consists of Justices Jennings, Sharp, and Brown.